Simonson v. The C., R. I. & P. R. Co.

SIMONSON v. THE C., R. I. & P. R. Co.

1. **Evidence :** STATEMENT OF OPINION. A party cannot be prejudiced by a statement of opinion by a witness when the fact to which he testifies as a matter of belief is otherwise established by undisputed evidence.

2. **Railroads :** PERSONAL INJURIES: MEASURE OF DAMAGES. In an action against a railway company for damages for personal injuries, the defendant offered to show what was the average cost of living for a person in plaintiff's condition at the town in which he lived at the time he suffered the injury: *Held*, that the evidence was not admissible.

3. ———— : ———— : ————. Evidence of the amount of plaintiff's earnings was admissible, not as a basis of computation, but as a circumstance tending to show his capacity and disposition to earn money. In like manner it was competent to show the condition of his health, his aptitude and qualifications for business, and his habits of industry, or anything else which affected his prospective earnings or savings.

4. ———— : ———— : ADMISSION OF LIFE TABLES. The life tables were admissible upon the question of damages where the injury resulted in permanently disabling the party injured.

| | |
|---|---|
| 49 | 87 |
| 80 | 428 |
| 49 | 87 |
| 84 | 327 |
| 49 | 87 |
| 85 | 178 |
| 49 | 87 |
| 115 | 541 |
| 49 | 87 |
| 131 | 27 |

5. ———— : ————: EVIDENCE. It was competent to show that the plaintiff was dependent upon his earnings, as indicating the probable continuance of his industry.

6. ———— : ———— : ————. For the same purpose the evidence was properly admitted to show that his relations with his step-father were unfriendly, and that he had been driven out from home.

*Appeal from Shelby Circuit Court.*

FRIDAY, JUNE 14.

ACTION to recover for personal injuries received by the plaintiff's intestate, Larz Nelson, while employed by the defendant in loading one of its cars. The action was brought by Nelson in his life-time. After one or more trials of the action he died, and his mother, Mary Simonson, is substituted as administratrix. She files a substituted petition in which she avers, among other things, that the death of the intestate was caused by the injuries, and that the injuries were caused by the negligence of the defendant, and that her intestate did not contribute thereto. Other facts are stated in the opinion. There was a trial and verdict for the plaintiff. Defendant appeals.

*Wright, Gatch & Wright,* and *Rising, Wright & Baldwin,* for appellant.

*L. W. Ross* and *D. B. Daily,* for appellee.

ADAMS, J.—I. The plaintiff read in evidence the deposition of one Mason, to whom a question was asked in these words: "What was the plaintiff Nelson doing at and immediately before the injury mentioned in your last answer?" The witness answered as follows: "Just before he was injured he was gathering up spikes and placing them on the car. I think he was trying to get off the car at the time he was injured." Before the last sentence was read the defendant objected to it as incompetent. The court

1. EVIDENCE: statement of opinion.

overruled the objection, and the defendant excepted.   It is contended by defendant that the statement of the witness that he thought Nelson was trying to get off the car is inadmissible, because it was the mere opinion of the witness.

The undisputed evidence, however, shows that Nelson fell from one of defendant's cars, and that he was in the act of getting off.   The error, therefore, if any, in admitting Mason's statement as to what he thought, was without prejudice.

The same witness was asked to state the cause of the injury, and he answered: "I think that he was coming off the car, and that the car started, and that the sudden motion of the car caused him to fall in such position that the wheels passed over his leg."   This testimony was admitted against the defendant's objection.   But the undisputed fact seems to be that Nelson's fall was caused by the sudden starting of the cars.   Nelson described the manner of the accident, and no one contradicts him.   He was asked to state how he got hurt, and he says: "How I got hurt?   Then I laid the spikes down, then I went to step off the car on the platform, then the car gave a big jerk, then I fell down."   We cannot think, therefore, that the defendant was prejudiced by Mason's statement.

The defendant, however, contends that it offered evidence which would have had a tendency to contradict Nelson, and that the evidence was improperly excluded.   The defendant offered to show that in a train coupled as that was there is a slack between each car, and that the last car, upon which Nelson was, could not have started simultaneously with the forward cars, but that there must have been a considerable movement and noise of the forward cars while the slack was being taken up, and before the last car would be moved.   This fact, however, would only have tended to show that Nelson had warning, and only relates to the question of Nelson's contributory negligence.

In this connection we may also say that we think that the evidence was properly excluded.   Every person knows that,

ordinarily, there is some slack in the couplings of cars to be taken up when a train starts. The amount depends upon the character of the couplings and other things. If in this case the grade was level, or ascending in the direction of the engine, the slack might have already been substantially taken up by previous short forward movements of the train.

II.  The defendant offered to show what the average cost of living was in 1874 for a man of Nelson's con-dition in life, at Council Bluffs, where Nelson resided in 1874, just previous to his death, including clothing, washing, mending, medicine, and medical attendance and incidental expenses. The court refused to admit the evidence, and the defendant excepted.

*2. RAILROADS: personal inju-ries: measure of damages.*

One of the questions to be determined by the jury in assessing damages was as to the pecuniary injury sustained by Nelson in regard to his prospective estate. To enable the jury to determine it, it was shown in evidence that at the time he was injured he was earning one dollar and a half a day; that he was then seventeen years old, and that at the time of his death he had a prospect of life, according to life tables, of about forty-three years. As his death terminated his cost of living, it is contended in substance by the defendant that if the defendant is to be charged with what he might have earned, it should be credited with what it would cost him to live.

Where a person is wholly incapacitated for labor by an injury, but his life is not shortened, it is evident that the injury, with reference to his prospective estate, is greater than it would have been if the injury had resulted in death. In assessing damages, therefore, for an injury which has resulted in death, some account must be taken of the fact that the cost of living of the decedent, as well as his earnings, has been terminated. But how his probable earnings or probable cost of living shall be determined, it is not easy to give a satisfactory answer. A young man, for instance, is killed who has never earned anything, and was not qualified

Simonson v. The C., R. I. & P. R. Co.

to earn much, but whose talents and qualifications were such that his prospects of earning money were large.   We cannot say that he has sustained no injury with reference to his prospective estate, and yet the extent of the injury is, by necessity, largely a matter of conjecture.   Again, if a man is killed whose earnings have been large, but who has retired from business with no intention of resuming, it is not certain that he is injured in reference to his prospective estate.   Yet, because he might resume, a jury would not be justified, where a cause of action existed for the injury, in allowing nothing for the injury sustained by the decedent in reference to his prospective estate.   And here, again, a verdict must be based largely upon conjecture.   Life tables have been held to be admissible where an injury has resulted in death to show the prospect of life, and yet the only point to be established is the probable period of earning money.   To find that period a large deduction must be made from the probable period of life on account of probable idleness, sickness, and the infirmities of age.   This probable loss of time is shown by no tables.   So the probable period of earning money, with all the aid which the life tables can furnish, is largely a matter of conjecture.

At the time of Nelson's injury he had been employed for a few weeks by defendant as a mere laborer, and during that time he had been hiring his board at Council Bluffs, and he died at Council Bluffs.   The defendant contends that it should have been permitted to show the average personal expenses of such a person at Council Bluffs at that time.   If the plaintiff had offered to show the average earnings of young men at Council Bluffs, of Nelson's age and condition in life, the evidence would have been clearly inadmissible.   The fact which the jury was entitled to know was, what Nelson was earning.   There is a great difference in the earnings of men of that age and condition in life.   Some earn more and some less, and some nothing.   So there is a great difference in personal expenses.   Some are extremely frugal, and some

spend everything.   We see no reason why Nelson's case should be affected by what the average young man of his condition in life, at Council Bluffs, expends.   Possibly some young men in Council Bluffs, of his condition in life, expend something for tobacco, and liquor, and billiards, and in more questionable ways.   If so, their average expenses would embrace something on that account.   If Nelson expended nothing for such purposes we see no reason why the recovery in this case should be less by reason of what young men, on an average, in Council Bluffs, of his condition in life, expend.

The jury was permitted to know what Nelson was earning, not as a basis of computation, but as a mere circumstance tending to show his capacity and disposition to earn money.   In the same connection it was proper to show the condition of his health, his aptitude and qualifications for business, and his habits of industry.   Either party might have shown his habits in regard to the use of intoxicating liquor, and in regard to anything else which affected his prospective earnings and savings.   If his personal expenses were such as to throw any light upon that question, they might, doubtless, have been shown.   The jury was entitled to see Nelson as he was viewed with reference to his prospective capacity and disposition for earning and saving money.   No data could be given them for a computation. Taking Nelson as he was shown to them, it was for them to say, from their knowledge of business life and all its contingencies, and in the exercise of their best judgment, what was the pecuniary injury sustained by Nelson in reference to his prospective estate.   Upon this point the evidence might, perhaps, have been fuller than it was, but we think that no proper evidence was excluded.   At all events, we do not think that the court erred in refusing to admit evidence of the average personal expenses of young men of Nelson's condition in life at Council Bluffs.

III.   The defendant assigns as error the admission of the life tables.   But Nelson was not only permanently disabled

4. ——: ——: by the injury, but .there was, we think, some evi-
life tables. dence tending to show that he died by reason of
the injury. It is very slight, to be sure, but we cannot say
that it was wholly insufficient to justify the jury in so find-
ing. Nelson's leg was crushed and amputation was made
necessary. His system, of course, received· a severe shock,
and, according to the testimony of his mother, he never fully
recovered. We are not able to say, therefore, that the court
erred in admitting the tables, even if the admissibility
depended upon a finding that he died by reason of the injury.

IV. The defendant complains that certain questions asked
by the plaintiff's counsel were allowed which were leading.
Two of the questions are certainly material and leading. One
question is in these words: "You state to the jury that you
did not hear any bell except the bell rung for the engineer
and switchman?" Another question is in these words: "You
had no knowledge of the train starting up?" The questions
could not well have been asked in a more objectionable form.
In view of the fact that Nelson was plaintiff, we should not
hesitate to reverse the case for error in allowing the questions
to be asked, had not Nelson already testified substantially to
the same facts. He had already testified that no bell was
rung except for the engineer and switchman, and, of course,
if none was rung he did not hear any. As to the question in
regard to knowledge of the train starting up, we have to say
that the want of prejudicial error is not so clear. The wit-
ness, however, had stated that no signal was given, and that
he did not know that the engine had steam on or was able
to move. His statement, therefore, that he had no knowledge
of the train starting up, hardly appears to us to add anything.

Other questions were objected to as leading. But it apears
to us that they were either immaterial and not objected to on
that ground, or, that the testimony elicited had already been
substantially given by the same witness.

V. Nelson was allowed to state, against the objection of the
defendant, that he had no money, and was dependent upon his

**5. ——: ——:**
**evidence.** earnings. This, we think, was a circumstance which the jury might properly consider in regard to the probable continuance of Nelson's industry. It is nearly certain that a young man in good health, who is dependent upon his earnings, will earn something. There is not the same certainty in regard to one who is independent of his earnings.

VI. Nelson's mother was allowed to testify, against the objection of the defendant, that she was a washerwoman; **6. ——: ——: ——.** that her husband did not contribute to the support of her son; that he was not good to him, and drove him from home. Nelson's mother's husband, it appears, was his step-father. Nelson, when injured, was seventeen years old, and was receiving one dollar and a half a day. According to the evidence he had been deprived of a home and driven out into the world to care for himself. There was other evidence tending to show that he had been emancipated. Whether or not his condition accounts for the fact that he was earning such respectable wages for a person of his age, we think it was a circumstance not without bearing upon the question of his necessities, and that question cannot be separated from the question of his prospective earnings, especially so far as his immediate future was concerned.

VII. Mr. Wright, one of the counsel for defendant, was called as a witness, and testified to certain statements made by plaintiff's witness, Mason, which were inconsistent with Mason's testimony upon the stand. Wright also testified that he reduced Mason's statement to writing, and that the writing was signed by Mason. Afterwards Wright was recalled and asked if Mason swore to the statement. The plaintiff objected to the question, and the court sustained the objection. The ruling is assigned as error.

If the jury believed Wright they must have believed that Mason said what Wright says he said, and must have regarded him as completely impeached as the alleged statements could have the effect to do it. Wright's statement that the paper

was sworn to, if it had been admitted, would not have cor-roborated Wright.

It is not a question as to Mason's deliberation in signing the paper, because the paper is not in evidence. There is nothing tending to rebut Mason but Wright's statement as to what he said, and the weight of that statement, as evidence, must depend wholly upon Wright's credibility as a witness, to which Wright himself could add nothing.

The counsel for defendant, however, claim, in substance, if we understand them, that they are entitled to Mason's state-ment to Wright as evidence, if it was sworn to. They are not satisfied simply with his impeachment. Yet more than that would be hearsay, and inadmissible upon that ground.

Some other errors are assigned, but, so far as they are dis-cussed, we think that they are covered by the views which we have expressed.

The judgment of the Circuit Court is

AFFIRMED.