## BEEMS, ADM'R., v. THE C., R. I. & P. R. Co.

58 150
83 356

58 150
85 178

58 150
86 18

58 150
89 429

58 150
96 707

58 150
106 324

58 150
107 490

58 150
109 636

58 150
135 588

58 150
139 330
140 38

1. **Practice**: MOTION FOR NEW TRIAL. Conceding that the delay in filing a motion for a new trial may be excused upon proper showing of diligence, or that it was the result of accident or misfortune, the showing in this case was not sufficient.

2. ———: ———: TIME OF FILING: JUDGMENT. A motion for a new trial, if not filed within the time fixed by the agreement of the parties, should be overruled; and,a judgment should not be set aside for the reason that it was entered before the time fixed for filing the motion·had expired.

3. **Railroads**: PERSONAL INJURIES: CONTRIBUTORY NEGLIGENCE. The act of the intestate in going between the cars to uncouple them, while they were moving at an improper and unusual rate of speed, after having signaled the engineer to slacken speed, was not necessarily contributory negligence.

4. **Practice in the Supreme Court**: EXCEPTIONS TO INSTRUCTIONS. If it appears from the transcript that the instructions were excepted to at the time they were given, it is sufficient, although the exceptions were not saved by the motion for a new trial for the reason it was not filed in time.

5. **Railroads**: NEGLIGENCE: INSTRUCTION. Where the petition charged negligence upon the engineer alone, and the instruction stated the cause of complaint was that the "parties in charge of the engine" were negligent, it was held that no possible prejudice could result from such use of the plural number, and that the variance between the petition and the instruction was immaterial.

6. ———: ———: KNOWLEDGE OF. The railroad company is liable, notwithstanding the negligence of the intestate, if ordinary care was not exercised by its employes to prevent the accident, after they knew of the intestate's negligence; and as this rule of law is clearly expressed, the form of the instruction is not important.

7. ———: ———: FOOT CAUGHT. The fact that the intestate's foot was caught between the rails, so that he was fastened to the place, would not excuse the railroad company if its cars were negligently driven over him.

8. ———: EVIDENCE: RULES OF THE COMPANY. The rules of the company, requiring engine-men to exercise caution when "backing," and holding them accountable for a violation of the rules, were competent evidence in this case.

9. **Damages**: LOSS OF LIFE: EVIDENCE. Evidence as to the number of intestates's family, and the amount of his property, showing circumstances stimulating the deceased to industry and economy, whereby his life was rendered more valuable, was properly admitted. Per BECK, J., ROTHROCK, J., *concurring*.

10. ——: ——: ——: PER CURIAM. The real question is what was the value of the life of the deceased to his estate. The number of his children can have no bearing upon that question, and the admission of the evidence as to the number of his family was error. Per DAY, J., SEEVERS and ADAMS, JJ., *concurring*.

## *Appeal from Cass Circuit Court.*

### THURSDAY, APRIL 20.

ACTION by an administrator to recover damages resulting to the estate of the intestate, who was a brakesman in the employment of defendant, on account of injuries resulting in his death, caused by the negligence of defendant's employes. There was a verdict and judgment for plaintiff. Defendant appeals. The facts of the case appear in the opinion.

*Wright & Wright*, for appellant.

*A. S. Churchill*, for appellee.

BECK, J.—The case may be more briefly and satisfactorily disposed of by considering the objections to the judgment of the court below in the order of their presentation in the argument of defendant's counsel.

I. The verdict was rendered on the 16th day of March, 1880. On a previous day, counsel for the respective parties 1. PRACTICE: had stipulated in writing "that either party shall motion for new trial. have five days from the coming in of the verdict in which to file the usual motions." On the 22d of the same month judgment was rendered upon the verdict; on the 23d defendant filed a motion in arrest and for a new trial, and on the same day, moved for judgment *non-obstante*. On the next day plaintiff moved to strike the motion for a new trial, on the ground that it came too late. On the 26th defendant moved to set aside the judgment and made a showing against plaintiff's motion to strike. The showing against the motion to strike was in effect, that one of the counsel of defendant,

engaged in the trial of the case, left for another court before the verdict was in. In the intervals of business he prepared the motion for a new trial, and on the 19th sent it to one of his associate counsel residing at the place of trial. It was left at the house of the attorney, who was absent, and was not filed until the 23d. The court overruled the motion to strike, the motion for judgment *non-obstante*, the motion in arrest and for a new trial, and the motion to set aside the judgment. We think the several rulings are correct. It may be admitted that the judgment being entered on the 22d of November (the 21st being Sunday), was rendered before the expiration of the time fixed by the stipulation of the parties for filing motions. The entry of the judgment, however, was no impediment in the way of defendant presenting his motion for a new trial. If that motion had been sustained the judgment would have been set aside. We believe that it often occurs in practice that judgments are entered before motions for new trials are disposed of; if such motions be sustained, the judgments are regarded as being set aside by the orders granting new trials, or such orders expressly provide that the judgments be set aside. Defendant's showing, in excuse for delay in filing his motion for a new trial, may be considered in connection with that motion which, it must be admitted, was not filed within the time fixed in the stipulation of counsel. If it be conceded that the delay in filing the motion for a new trial may be excused, upon proper showing of diligence on the part of defendant, or that it was the result of accident or misfortune, we are of the opinion that the showing of defendant's counsel fails to make out such a case.

II. The motion for a new trial was filed on the 23d of November, which was more than five days from the coming in of the verdict. See Code, § 45, par. 23. The parties by the stipulation did not waive the effect of Code, section 2838, further than to substitute five days in the place of three for the filing of the motions contemplated. If the

2. ——:——: time of filing : judgment.

motion was not filed within the time prescribed by the statute, it was for that reason properly overruled. *Boardman v. Beckwith*, 18 Iowa, 292; *Clinton National Bank v. Graves et al.*, 48 Iowa, 228. The same result must follow when the filing is not within the time fixed by the agreement of the parties. The motion for a new trial was properly overruled, and the court rightly refused to set aside the judgment, upon the ground that it was entered before the time for making a motion for a new trial, as fixed by the agreement, had expired.

III. We will now consider the action of the court in overruling the motion for judgment *non–obstante*. The intestate

3. RAILROADS: personal injuries: contributory negligence.

met his death in making an attempt to uncouple the tender from a car. The special findings of the jury show that when he went between the cars to uncouple them they were moving at an improper and unusual rate of speed. Counsel for defendant insist that this finding establishes the fact of contributory negligence on the part of the intestate. The petition alleges that defendant's employes in charge of the engine were negligent, in failing to obey a direction given them by a signal made by the intestate to check the speed of the cars. The testimony tends to support this allegation. The jury were authorized to find from the testimony that deceased made two attempts to uncouple the cars while they were moving. After the first attempt he came out from between the cars, and signaled directions to check their speed; he immediately went again between the cars to make the second attempt to uncouple them. His signal was not obeyed. He was authorized to believe that the motion of the car would be checked, and he was not required to wait, before acting, to discover whether obedience would be given to his signal. The jury could have found that after the signal had been given, and after he had gone between the cars, if their speed had been checked, he would not have been exposed to danger. His act, therefore, in going between the cars after having made the signal to check their speed, was not necessarily contributory negligence. *Steele v. Central R. R. of*

*Iowa*, 43 Iowa, 109. The special findings of the jury are, therefore, not inconsistent with the general verdict.

IV. Counsel for defendant complain of certain instructions given to the jury, and the refusal to give an instruction 4. PRACTICE: asked by defendant. Plaintiff's counsel insist that exceptions to instructions. no exceptions were taken to the instructions in the court below, except in the motion for a new trial, which, as we have seen, was not filed in time, and for that reason was properly overruled, and an amended abstract filed by plaintiff shows that no exceptions to the rulings upon instructions were taken at any other time. But the correctness of the amended abstract upon this point is denied by defendant. We have, therefore, found it necessary to examine the manuscript record and find that the rulings upon the instructions were excepted to at the time they were given. This is sufficient to require us to consider the questions discussed by counsel touching the instructions, though it may be conceded that the exceptions were not saved by the motion for a new trial, for the reason that it was not filed in time. We will proceed to consider the objections discussed by counsel, which are based upon the instructions given and refused.

V. The fifth instruction given, in stating the acts of negligence charged by plaintiff, uses this language: "The third 5. RAILROADS: cause of complaint is that the parties in charge negligence: instruction. of the engine moved the train at an unusually fast rate of speed." The petition in charging negligence contains this averment: "The *engineer* * * * * carelessly and negligently backed up the said train unusually fast." Counsel insist that the statement of the instruction is broader than the language of the petition just quoted, in that, by the use of the plural "parties," it applies to the fireman who was upon the engine assisting the engineer, and he is not charged with negligence in the petition. If the fireman was operating the engine or assisting in that work he must be regarded as an engineer. And if there were two engineers the language of the petition is applicable to the one

who was guilty of negligence, or to both, if both were negligent. The allegation of the petition charges negligence upon the engineer. There is no rule of pleading which limits the averment of negligence to one engineer, on the ground that the singular number is used. So the instruction, by the use of the plural "parties," is applicable to one engineer, if there was but one. We can discover no possible prejudice resulting to defendant from this want of agreement, between the petition and instruction, in the number of the names used to indicate the persons charged with negligence.

VI. The sixth instruction given directed the jury, in substance, that plaintiff's negligence will not relieve defendant *6. ——: ——: knowledge of.* of liability, if the negligent act of defendant, which caused plaintiff's injury, was done after the discovery of plaintiff's negligence, and defendant could have avoided the accident by the exercise of ordinary care. This rule is stated in the instruction as being an exception to the doctrine that defendant is not liable if the plaintiff contributed to his injury by his own negligence. Counsel for defendant insist that the negligence of the intestate existed, notwithstanding the knowledge by defendant of such negligence, and want of care to avoid the accident, and that the instruction is to the effect that intestate was not to be regarded as negligent if his want of care was known to the defendant and no care was exercised by its employes to avoid the accident. We think the instruction will not bear this construction. It very clearly expresses a correct rule of the law, namely, that defendant is liable, notwithstanding intestate's negligence, if ordinary care was not exercised to prevent the accident, after the intestate's negligence was known to defendants' employes. The form of the instruction is not important if it expresses with sufficient clearness the rule of law.

Counsel insist that the instruction "submits a new charge of negligence, viz., a failure to exercise due care after discovering the danger of the deceased." The rule presents no new issues involving the negligence of the parties. If defendant

was not negligent, plaintiff cannot recover in any event. If defendant was negligent, and knew of intestate's negligence, it is liable. The rule has no relation to the original issues of the case concerning care or negligence, but involves an issue relating to defendant's knowledge of the intestate's negligence.

VII. The court instructed the jury that if intestate's foot was caught between the rails and he "was thus held and run over, *without any negligence on the part of the other employes of defendant*, such as is charged

7. ——: ——: foot caught.

in the petition, then the plaintiff cannot recover anything." The defendant asked an instruction, which was refused, to the effect that if the intestate's foot was caught between the rails the defendant is not liable, even though the jury should find the negligence charged in the petition. The instruction given is correct. If intestate was run over by reason of defendant's negligence, surely it cannot be claimed that defendant is not liable, because intestate's foot was caught between the rails. It would be a strange doctrine to hold that defendant could back its trains with unusual speed, without obeying signals to move more slowly, and thus negligently run over a brakesman, and would not be liable, for the reason that the unfortunate man was fastened to the spot by his foot being held between the rails. Whatever was the intestate's condition at the time of the accident, whether free to move, or fastened to the place, the defendant is liable if its cars were negligently driven over him.

VIII. The Circuit Court, against defendant's objection, admitted in evidence certain rules, promulgated by the company, for the control of its engine-men and fire-

8. ——: evidence : rules of the company.

men. The rules require caution in handling cars when "backing," and direct the employes to "look back frequently to see that all is right." They hold engine-men accountable for their violation. We think the rules were competent evidence. If it should appear that defendant's employes violated these rules, defendant could not,

surely, deny that they were negligent. The train was backing at the time intestate was killed. The rules, taken together, directed the employes of defendant as to their duty when backing trains, as well as when moving them forward. They were, we think, applicable to the service in which the employes were engaged at the time of the accident.

IX. The verdict, we think, finds sufficient support in the testimony. We are not accustomed to discuss the evidence in similar cases. Counsel for defendant have not done so in this case, and, doubtless, do not expect it from us.

X. The plaintiff was permitted to show, against defendant's objection, the number of the family of the intestate and the amount of the property he had accumulated. The admission of this testimony is the ground of an objection to the judgment urged by counsel for defendants. Mr. Justice Rothrock and myself concur in the opinion that the testimony was rightfully admitted. We think it tended to show circumstances stimulating the intestate to industry and providence, which would largely add to the value of his personal services to his own estate. The fact that the intestate had accumulated property while supporting his family would tend to show the exercise by him of industry and economy, virtues that rendered his life more valuable in the acquisition of property, the only standard of value of life that may be considered in the case. Evidence similar to the testimony complained of was admitted and held competent in *Simonson v. The C., R. I. & P. R. Co.*, 49 Iowa, 87.

*9. DAMAGES: loss of life: evidence.*

The other members of the court unite in the conclusion that the testimony was incompetent and that the court erred in admitting it. For this error, they think, the judgment of the Circuit Court ought to be reversed. These views and conclusions are expressed in an opinion prepared by Mr. Justice Day, and, in accord therewith, as the decision of the majority of this court, the judgment of the Circuit Court must be

REVERSED.

DAY, J.—The evidence shows that the deceased was, at the time of his death, twenty-four or twenty-five years of age, and that he had been at work for himself since he was nineteen years of age. Against the objection of the defendant, the plaintiff was permitted to prove that deceased had a wife and two children, and some accounts which were worthless, and furniture of the value of one hundred and fifty dollars. The appellee's attorney insists that the evidence tends to show deceased's ability to earn money, and that it was properly admitted under the principles announced in *Simonson v. C., R. I. & P. R. Co.* 49, Iowa, 87. In this case it was held that the jury might properly consider the fact that a young man, seventeen years of age, had no money, and was dependent upon his earnings, as a circumstance in regard to the probable continuance of his industry. It was said that "it is nearly certain that a young man dependent upon his earnings will earn something." This case goes to the verge of propriety, and beyond the doctrines announced in it we are unwilling to go. It is competent to show what a party earned during his life, as that has bearing upon the probable loss to his estate by his death. It may also be competent to show that the deceased was a married man, for from observation and experience it may fairly be assumed that a married man will be more frugal and industrious, and hence will accumulate a larger estate, than a single man. But observation and experience do not teach that one's income is likely to increase in the same ratio as the number of his children. There is no rule of law under which the estate of a deceased father of a dozen children can properly recover on account of his death, more than the estate of such a father of one child or of none. The real question in this case is, what was the value of the deceased's life to his estate? The number of his children can have no legitimate bearing upon that question, although it may furnish the ground of an earnest appeal to the sympathy of the jury, and we have no doubt that that is the real purpose

for which such testimony is offered. SEEVERS, Ch. J., and ADAMS, J., concur in these views. It follows that, for error in the admission of this evidence, the judgment must be

REVERSED.