FRANK WHEELAN, Trustee, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO., Appellant.

1. **Negligence:** PRESUMPTION: EVIDENCE: INSTRUCTIONS TO JURY. In an action for damages for the negligent killing of one D., a section hand employed on the defendant's railway, it appeared that the deceased was killed by a passing freight train while standing within a few feet of the track, and leaning upon a crow-bar, the opposite end of

| 85 | 167 |
| 87 | 279 |

| 85 | 167 |
| d89 | 434 |

| 85 | 167 |
| 98 | 220 |
| 98 | 575 |
| 99 | 145 |
| 85 | 167 |
| 108 | 324 |

| 85 | 167 |
| e114 | 153 |

| 85 | 167 |
| d115 | 137 |
| 115 | 139 |

| 85 | 167 |
| 117 | 673 |

| 85 | 167 |
| 121 | 130 |
| 121 | 406 |

which rested upon ground higher than that where the deceased was standing. The train in question contained several dump cars, the doors of which were from twelve to fifteen feet in length, and about three feet in width, and were hung from the top of the car, and fastened at the bottom. It was the theory of the plaintiff that the fastening to the doors of one of these cars was so defective that the doors became unfastened, and swinging outward toward the deceased as the train passed, struck the bar upon which he was leaning with such force as to drive it against his neck and breast, and instantly killing him. The evidence showed that the door in question was found down at several points below the place where the accident occurred, and was fastened up, but that it was not down at the next station above; that the portion of the door which it was claimed struck the bar in the hands of the deceased was about two inches wide and nearly an inch thick, but that the bar showed no dent nor other indication of having been struck. The court instructed the jury that to justify them in finding that the deceased was killed as alleged, "it was necessary, not only that the circumstances should all concur to show that he was so killed, but that they were inconsistent with any other rational conclusion;" that the jury could not "presume that a door was down and swinging, or that it swung outward and caused the accident;" but that the "evidence must reasonably and fairly show" such facts, and "must exclude any fair inference or presumption that the accident was caused in any other manner or by any other means." *Held*, that under the evidence, a verdict for the plaintiff was inconsistent with the instructions given.

2. ———: CIRCUMSTANTIAL EVIDENCE: WEIGHT: INSTRUCTION TO JURY. An instruction to a jury that circumstantial evidence, "when strong and convincing, is often the most satifactory from which to draw conclusions of the existence or non-existence of a disputed fact," is not objectionable as placing a higher value upon presumptions or inferences than upon positive and direct testimony.

3. ———: PERSONAL INJURY: DAMAGES. The damages that may be recovered in such case are limited to the present worth of the decedent's life to his estate, in determining which evidence of the age of the deceased, his probable duration of life, habits of industry and sobriety, health, means, business, earnings, skill in business, whether he was married or single, and his ability to labor, may be considered.

4. ———: SPECIAL FINDINGS: PRACTICE. A party is not entitled to have submitted to the jury for their special findings interrogatories in relation to facts about which there is no dispute.

5. ———: PERSONAL INJURY: EXPECTANCY OF LIFE: EVIDENCE. Although the deceased was a minor at the time of the accident, *held*, that evidence of his expectancy of life should have been based upon his age at the time of his decease, and not at the assumed age of twenty-one years.

*Appeal from Johnson District Court.*—HON. S. H. FAIRALL, Judge.

MONDAY, MAY 16, 1892.

ACTION to recover damages for the death of William Doyle. Verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Mills & Keeler,* for appellant.

*M. P. Smith* and *Ranck & Wade,* for appellee.

KINNE, J.—This action is brought by the plaintiff, as the assignee in trust of the administrator of the estate of William Doyle, deceased. It appears that the intestate, William Doyle, was, on August 3, 1888, in the employ of the defendant as a section man or track repairer on its line of railway running from Marion to Ottumwa, and on that part of said line situated in Iowa county, in the vicinity of the stations of North English and Parnell. That on said day, and while engaged in his said occupation, at the place above named, a freight train of the defendant came by, going northeastward at a rapid rate of speed, and among the cars composing said train was what is known as a "stone dump," the doors of which were hung on hinges at the top. Said car doors were from twelve to fifteen feet long and three feet wide, and, when properly secured at the bottom, said doors sloped inwardly from the top. That these doors, except when opened to allow the stone and dirt to fall out, were arranged to fasten at the bottom by an iron strap, leaving an opening which passed over a staple, and was to be secured by a straight iron pin, which passed through the loop of the staple. It is claimed that the strap should have been secured by a hook passed through the loop of the staple, which would be held in place by its own weight, and the

weight of a chain attaching it to the car, and that the defendant in using the pin fastening was careless and negligent; that the pin, when thus placed through the staple horizontally, was easily shaken from its place, thus leaving the door free at the bottom to swing back and forth from the side of the car, which it did for several feet when the train was in motion; that while left in such unsafe condition, and as the train was passing by where said Doyle and others had been at work, the door on the east side of said stone dump car suddenly swung outward towards where deceased was standing, and struck an iron bar, which he was leaning upon, with such force as to drive it against his neck and breast, killing him instantly. It is averred that the deceased was not guilty of any negligence which contributed to produce his death, and that his death was caused by the carelessness and negligence of the defendant as above stated. The deceased was nearly twenty-one years old, healthy, and of good character and habits. The defendant files a general denial, and specifically denies the negligence charged.

When the train passed which is alleged to have killed Doyle he was standing on the east side of the track, which was inside the curve. He was leaning forward on a crowbar, the bottom of which rested upon somewhat higher ground than did his feet, and was nearer the track. He held the top of the bar in both hands, and about opposite his left breast. He was standing on the sloping top or edge of the embankment, and facing towards the track. There is some conflict in the evidence as to how far from the rail the deceased was standing when the accident occurred, but the plaintiff's witnesses put it at five feet. The dump on which he was standing was seven feet high, and the bar he was leaning upon was nearly five feet long, and weighed twenty pounds. The train was running from twenty-five to thirty miles an hour when

it passed the deceased. When the train was seen
approaching, the section foreman told his men to get
out of the way, and the deceased, the foreman, and
three others stepped to the east side of the track to let
it pass, and one man, James Doyle, stepped to the
west side of the track.   The men on the east side of
the track stood in the following order:  Furthest north,
Cronin, the foreman; one hundred feet south of him,
the deceased; five or six feet south of deceased, Cos-
tello; about thirty feet south of Costello stood McDon-
nell; and Flannigan was five or six feet south of him,
the nearest to the approaching train.   When the fore-
man gave the warning the train was six hundred feet
distant.   As the train approached, Flannigan was
looking south, and did not see the accident.   McDon-
nell was facing north, and saw the deceased prior to
and when he was killed.  Cronin saw the deceased fall.
So did Nichols, a brakeman on the train.  No one saw
anything hit him or the bar which he held.   The wit-
nesses who saw the accident say that, when all but a
a few cars had passed the deceased, they noticed him
going up and being carried along in the air, and when
he fell he was several feet north of the point where he
had been standing.   The crowbar seemed to have been
forced up against his neck and jaw, and through
between his jaw bones.  His right arm was broken, the
bar was lying at his side when he was picked up after
the train passed.

I.   We have stated the facts quite fully, owing to
the peculiarity of the accident, and the fact that nothing
was seen to strike the deceased, or the
bar which he held.   The plaintiff insists
that the defendant's negligence caused
the injury, and that the door heretofore
referred to swung out and struck the bar which the
deceased held, and thus killed him.   The evidence
shows without conflict that the train consisted of some

1. NEGLIGENCE:
presumption:
evidence: in-
structions to
jury.

twenty or more cars,—a caboose in the rear, then five box cars immediately ahead of the caboose, and then four stone dumps ahead of the box cars; the first stone dump next to the box car was number 18,499; that the doors of the stone dump cars were not down, loose, or swinging when the train reached Parnell, the first station north of the point of the accident; that the door on this car, 18,499, was fastened at North English, the first station south of the point of the accident; that the train made no stops between North English and the place of the accident, two and one-half miles; that the door of 18,499 was fastened with an iron pin attached to a chain; that this same door was down at Sigourney, at Williamsburg, and at North English, and in each case it was fastened up.

Upon these facts the plaintiff bases his claim that the defendant's negligence caused the death of Doyle. The claim rests only on the presumption that, while it is shown this door was put up and fastened at North English, two and one-half miles south of the point where the accident occurred, it must have got loose, swung out and hit the deceased, notwithstanding it is shown without conflict that the same door was up and closed at Parnell, the next station north of the place where the accident occurred. It may be conceded, at least for the purposes of this case, that the defendant was negligent in running a car with a door so defectively fastened as to come loose and fall down as this door is shown to have done. But that is not sufficient to fix a liability on the defendant. It must appear that its negligence caused the accident complained of, and that the deceased did not contribute to produce the result. It is an elementary principle of law that a condition or state of things once established by direct proof is presumed to continue as before until the contrary is shown, or a different or stronger presumption raised. 1 Greenleaf Evidence [12 Ed.] section 41. We may

then presume that the door, having been fastened at North English, remained so, unless there is evidence sufficient to overcome such presumption. Against this presumption, and the fact that the door was found up in its place at the next station north of the place of the accident, the plaintiff asks us to presume that in the meantime, and just at the instant of the accident, the door became loose, swung outward, hit the bar which deceased held in his hand, and killed him. Are we justified in so presuming from the evidence? If the evidence did not disclose the fact that the door in question had been loose and swinging several times prior to the accident, and once after it, on the same trip, counsel would not think of urging that the hasp thereof was the cause of the accident; but such fact is the basis of the presumption on which the defendant's liability is predicated. If it was not shown that the door was fastened at the nearest station south of the point of the accident, and that it was up in its place at the next station north of it, the jury might well have presumed, in view of the other evidence, that it caused Doyle's death. It does not appear from the evidence as to whether or not the train stopped immediately after the accident. If it did, surely some of those present would have noticed the fact, if the door was loose and swinging. As no such evidence appears, we may presume that the train did not stop, or, if it did, that no one saw the door loose or down. The iron which the plaintiff claims struck the bar is shown to have been about two inches wide and nearly an inch thick. The evidence shows that the train was running from twenty-five to thirty miles an hour, and yet the bar which deceased held, and which was produced before this court during the oral argument in this case, shows no dent or other indications of having been struck by anything. It is inconceivable how such an iron, two inches wide and an inch thick, which was attached to a train

running twenty-five to thirty miles an hour, should have struck the bar in the decedent's hands, and left no mark. It must be conceded, we think, that deceased was in some manner killed by the train. The evidence shows that there were no cars in the train of unusual width; that there was nothing on the train extending out beyond the sides of the cars.

The court below, in the seventh division of his charge, among other things said to the jury that "to justify you in finding that deceased was killed by a swinging door striking a crowbar, as claimed by the plaintiff, it is necessary, not only that the circumstances should all concur to show that he was so killed, but that they are inconsistent with any other rational conclusion." And again, in the seventh division of the charge asked by the defendant, and given, the jury were told: "The jury cannot conjecture or presume that a door was down and swinging, or that it swung outward, and caused the accident. To warrant the jury in finding that such door was down and caused the accident, the facts and circumstances in evidence must reasonably and fairly show that such dump car door was actually down and swinging, and that it swung outward, and hit William Doyle, or the iron bar he held, and thus caused the accident; and it must exclude any fair inference or presumption that the accident was caused in any other manner or by any other means."

These instructions were the law of the case, and the jury were bound to follow them. Can it be said that the circumstances in this case "all concur to show" that Doyle "was so killed?" Are they inconsistent with any other rational conclusion? Do the "facts and circumstances in evidence reasonably and fairly show" that the door was down, and that it caused the accident? And do they exclude "any fair inference or presumption that the accident was caused

in any other manner, or by any other means?" We think not. In the absence of all evidence that the door was loose, down, or swinging at the time of the accident; in the absence of any direct evidence as to what hit the bar or Doyle; with uncontradicted evidence that at the last station the door was put up and fastened, and found up at the next stop,—might we not be as fully justified in presuming that Doyle, whose bar was from a foot to two feet only from the train, lost his footing, fell towards the train (as he was leaning that way) and was struck by a car, and thus killed? Is it not probable, and is it not consistent with the evidence, to presume that standing, as he was, on a sloping embankment, leaning on the bar, his body inclined towards the train, and at most, as appears from the evidence, not over two to three feet from the cars as they passed, that he lost his footing, or was by the suction created by the rapidly moving train drawn towards it, and struck by it? It seems to us such presumptions are as fair and reasonable as those which are indulged in by the plaintiff to sustain this verdict.

In *Asbach v. Chicago, B. & Q. Railway Co.*, 74 Iowa 250, it is said: "A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well settled rule." It seems to us that we may reasonably draw other conclusions as to the cause of this injury from the facts in evidence than those contended for by the plaintiff. "Verdicts must have evidence to support them, and must not be founded on mere theory or supposition." *Bothwell v. C., M. & St. P. Railway Co.*, 59 Iowa, 194. A jury will not be per-

mitted merely to conjecture how the accident occurred. *Cumberland & P. R. Co. v. State* (Md.), 20 Atl. Rep. 785. And it is said that "in matters of proof we are not justified in inferring from mere possibilities the existence of facts." *Baltimore & O. R. Co. v. State* (Md.), 18 Atl. Rep. 971. We have examined the cases cited by the plaintiff from this and other courts, but are unable to see how they can be held applicable under the peculiar facts in the case at bar. We are unable to find that the defendant's negligence contributed to produce the injury complained of.

II. The appellant objects to that part of the seventh division of the charge of the court referring to

2. ——: circumstantial evidence: weight: instruction to jury.

circumstantial evidence, which is thus stated: "This kind of evidence, when strong and convincing, is often the most satisfactory from which to draw conclusions of the existence or non-existence of a disputed fact." We do not think this instruction is open to the objection urged by the appellant, as placing a higher value upon presumptions or inferences than upon positive and direct testimony. Furthermore, the instruction is fully sustained by the authorities. In *State v. Moelchen*, 53 Iowa, 310, an instruction was in this language: "Strong circumstantial evidence, in cases of crime, is often the most satisfactory of any from which to draw the conclusions of guilt;" and the court said it was not objectionable, and was in accord with the views of the ablest writers upon the subject. "In both cases [civil and criminal] a verdict may well be founded on circumstances alone, and these often lead to a conclusion far more satisfactory than direct evidence can produce." 1 Greenleaf Evidence, section 13; *Commonwealth v. Webster*, 5 Cush. 295.

III. It is contended that the court erred in the fifteenth paragraph of its charge given to the jury

**8. ——: personal injury: damages.** in stating the rule as to damages. That part objected to reads thus: "In arriving at the amount thereof [damages] you will consider the evidence before you of the expectancy of life of the deceased; the nature of his vocation or calling; the wages he was receiving at the time of his death; and, in connection therewith, his physical condition and habits of industry—as grounds of estimating the probable pecuniary benefit to the estate of the deceased had his life continued, *and from such evidence, and none other, arrive at the amount of plaintiff's recovery,* but you will not allow anything for probable earnings of deceased until after he would have arrived at the age of twenty-one years." The objection is specially directed to that part of the instruction which is italicised, and it is insisted that the rule in this state in such cases is that recovery is limited to the "actual pecuniary loss to the estate." See *Donaldson v. The Mississippi & M. Railway Co.*, 18 Iowa, 290; *Rose v. Des Moines Railway Co.*, 39 Iowa, 255. It is said that under this instruction the jury could only consider the gross earnings of the deceased. We think the thought of the instruction was to guard the jury against considering matters not in evidence before them, not to prevent them from considering all the evidence in the case. It may be conceded that it would have been better if it had presented the rule more fully, but, as we hold, it was correct as far as it went, the defendant, if it desired the matter more fully presented, should have asked an instruction, and having failed to so do, cannot now object.

It is said by the plaintiff that this court has never gone so far as to hold that the amount of the recovery should be limited to what the net earnings of the deceased would have been had he lived. The court has frequently announced the rule as to damages in these

VOL. 85—12

cases to be compensation for the actual pecuniary loss to the estate of deceased. *Donaldson v. The Mississippi & M. Railway Co.*, 18 Iowa, 290; *Rose v. Des Moines V. Railway Co.*, 39 Iowa, 256. We think the rule, to state it more definitely, is that damages should be limited to the present worth of the decedent's life to his estate. *Simonson v. C., R. I. & P. Railway Co.*, 49 Iowa, 91; *Beems v. C., R. I. & P. Railway Co.*, 58 Iowa, 158; *James v. Richmond & D. Railway Co.*, 92 Ala. 231; *Pennsylvania Railway Co. v. Butler*, 57 Pa. St. 335. In determining this present worth, evidence of his age, probable duration of life, habits of industry and sobriety, health, means, business, earnings, skill in his business, whether he was married or single, and his ability to labor is admissible as bearing upon the question of damages. *Simonson v. C., R. I. & P. Railway Co.*, 49 Iowa, 91; *Beems v. C., R. I. & P. Railway Co.*, 58 Iowa, 158; *Central Railway & B. Co. v. Rouse*, 5 S. E. Rep. 627; 80 Ga. 442; *Louisville & N. Railway Co. v. Orr* (Ala.), 6 South. Rep. 360. The present worth is "the actual pecuniary loss to his estate," as near as can be measured by a money standard. It seems to us it is neither just nor equitable to sum up the probable gross earnings for a whole lifetime, ignoring the items of the necessary food, clothing and the like; also giving no consideration to the fact that old age and sickness may impair ability to labor and produce, and hold that said gross sum is the measure of recovery. The real value of the earnings the deceased to his estate may also be said to be the present worth of his life. It is not possible to arrive at this exactly, yet, if due consideration is given to the matters heretofore stated, and if from his gross earnings are deducted his necessary expenses, we shall approximate more nearly, at least, to the actual pecuniary loss to his estate. In *McAdory v. Railway Co.* (Ala.), 10 South. Rep. 507, this question was presented; and

while we do not wish to be understood as approving of all that is said in the opinion in that case, yet it will be found to contain an able and exhaustive discussion of this question of damages.

IV. The defendant objects to the refusal of the court to submit to the jury certain special interrogatories asked by him. Counsel in argument only considered some of them. As to the second, third and fifth interrogatories, it may be said they related to facts about which there was no dispute, and were properly refused; and generally, as to all of them, we may say, in view of the conclusion we have reached on another branch of the case, we need not further consider them.

<span style="margin">4. ——: special findings: practice.</span>

V. Against the defendant's objection, the plaintiff was permitted to show Doyle's expectancy of life at the assumed age of twenty-one years. This, we think, was wrong. Doyle, at the time of his death, was nineteen years and ten months old, and his expectancy of life should have been based on his age at the time of his death, not to begin at a future date. The court, however, properly instructed that his estate could only recover for probable loss after his majority. We think, however, that the defendant's objection, as made in the court below, was not sufficiently definite, in that it did not with certainty direct the attention of the court to the objection now argued.

<span style="margin">5. ——: personal injury: expectancy of life: evidence.</span>

Many other errors are assigned. The question of the decedent's negligence is elaborately discussed by counsel. The conclusion heretofore reached, that there was no negligence shown on part of the company, renders the consideration of these other assignments of error unnecessary.

For the errors pointed out, the judgment of the district court is REVERSED.