HENDRICKS *v.* McCAUSEY, *doing business as* LENA & LOU.

1. NEGLIGENCE—FIRES—INSTALLATION OF FURNACE SMOKE PIPE.
     In action on contract for installation of heating plant and winter air-conditioning unit in defendants' building used as a beer tavern with living quarters above, wherein defendants filed a set-off and recoupment claiming plaintiff had negligently installed the plant causing a fire in the building, evidence was sufficient to raise an issue of fact as to proper installation of the smoke pipe by plaintiff.

2. SAME—DEFECTIVE INSTALLATION OF FURNACE SMOKE PIPE—BURDEN OF PROOF—PROXIMATE CAUSE—FIRE.
     In action on contract for installation of heating plant and winter air conditioning unit in defendants' building, wherein defendants filed a set-off and recoupment for fire damage, based on

---

Function of court and jury on question of causation, see 2 Restatement, Torts, § 434.
Necessity of adequate causal relationship between a negligent act and injury, see 2 Restatement, Torts, § 430.

plaintiff's negligence in installation of the plant, defendants had burden of proof of establishing that fire was caused by defective installation of smoke pipe as claimed.

3. SAME—FIRES—PROXIMATE CAUSE.

The fact that fire damaging building might have been caused by an improperly-installed smoke pipe is not sufficient to sustain a verdict for the owners against party who installed the smoke pipe.

4. SAME—PROXIMATE CAUSE—PREPONDERANCE OF EVIDENCE.

When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause, and he must fail also if it is just as probable that they were caused by the one as by the other, as the plaintiff is bound to make out his case by the preponderance of evidence as the jury must not be left to mere conjecture.

5. SAME—INSTALLATION OF FURNACE—FIRE—PROXIMATE CAUSE—EVIDENCE.

In action on contract for installation of heating plant and winter air-conditioning unit in building owned by defendants, wherein latter filed set-off and recoupment for fire damage alleged to have been caused by negligent installation of furnace smoke pipe, defendants failed to establish by the weight of the evidence that the faulty installation of the furnace was the cause of the fire.

6. APPEAL AND ERROR—SET-OFF AND RECOUPMENT—FAILURE TO SUSTAIN BURDEN OF PROOF—NEW TRIAL.

In action to recover contract amount for installation of furnace and winter air-conditioning unit wherein defendants failed to sustain their burden of proving that proximate cause of fire damage, claimed in plea of set-off and recoupment, was due to faulty installation of the furnace by plaintiff, Supreme Court would have to remand cause to circuit court for new trial.

Appeal from Kent; Brown (William B.), J.   Submitted June 6, 1941.   (Docket No. 30, Calendar No. 41,624.)   Decided September 3, 1941.   Rehearing denied October 6, 1941.

Assumpsit by Herman Hendricks, doing business as Sunbeam Furnace Company and Hendricks Heat-

ing Company, against E. L. McCausey and Lena McCausey, doing business as Lena & Lou, for installation of a heating plant and air-conditioning unit. Set-off and recoupment by defendants, claiming negligent installation resulting in loss of a building by fire. Verdict and judgment for defendants. Plaintiff appeals. Reversed and new trial granted.

*Louis H. Grettenberger,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendants.

SHARPE, C. J.   Plaintiff began an action on a contract in the circuit court of Kent county to recover $602.90 for the installation of a heating plant and winter air conditioning unit on defendants' property. Defendants filed an answer admitting that the heating plant was installed and that the agreed price was as above stated; and filed a set-off and recoupment in which it is claimed that plaintiff negligently installed the heating plant and that as a result of such faulty installation the building caught fire and burned on May 17, 1940.

The following facts are not in dispute. Defendants owned and operated a beer tavern, called the Lena Lou, located near Ada, Michigan. They acquired the property in 1930 and made several alterations in the building, the last being made in April or May, 1940.

The building faced south. The ground floor dimensions were 49 feet, east and west, by 56 feet, north and south. In the front, in the southeast corner, there was a fountain room in which there was a service bar. This room was about 24 feet, east and west, and 25 feet, north and south. In the southwest corner, there was a dining room separated

from the fountain room by an archway. Adjoining the dining room on the north and in the northwest corner of the building, there was a dance hall and men's and ladies' lavatories. Back and north of the fountain room, there was a kitchen approximately 18 feet, north and south, by 20 feet, east and west. North of the kitchen, there was a private dining room approximately 12 feet north and south. North of the private dining room, there was a lean-to or furnace room which was about 9 feet, 10 inches, north and south, by 19 feet, 6 inches, east and west. There was a door on the east side of the kitchen, 3 feet east of which there were some separate structures housing a cooler, compressor, and supplies.

The lean-to was partitioned off into four compartments or rooms. There was no ceiling in the lean-to and the partitions went up to about the height of the doors. In the southeast corner, there was a small private bathroom. Immediately west of this bathroom, there was a clothes closet which was about 3 by 5 feet. North of these rooms and in the northeast corner, there was what was called the hot-water heating room. The remaining part of the lean-to or the west half was designated as the furnace room.

In the private dining room, there was a door leading into the private bathroom. West of that door, there was a curtained opening into the clothes closet; and west of that opening there was a door leading directly into the lean-to.

In the northeast corner of the lean-to, there was a small room about 3 by 4 or 5 feet in size in which there was a hot water heater and water tank. On the north wall, near the northeast corner, there was a brick chimney. There was a door from the private bathroom into the hot water heater room and a door

near the chimney from the heater room into the furnace room proper. On the north wall of the lean-to, about two feet west of the chimney in the furnace room, there was a door leading outdoors.

The fountain room, kitchen and private dining room were one story with an attic over the kitchen and private dining room. The fountain room had a flat gravel and tar roof over it. The attic roof pitched east and west and in the center it was about three and a half feet high. There was no floor in the attic, but strips of board were laid down to crawl on. Water pipes, gas pipes and electric wires laid exposed on top of the ceiling joists. There was a 12-inch electric fan in the attic which had been drawing the steam, greasy fumes and smoke from the canopies over the kitchen stove and exhausting them into the attic for 10 years. There was a screened opening in the south gable of the attic.

The roof of the lean-to pitched north and went into the end of the peak in the private dining room. The ends of the lean-to rafters rested against and upon the private dining room wall. The north gable of the pitched roof over the kitchen and back dining room had been sealed up with boards. When plaintiff's men installed the furnace, they made an opening large enough for the air ducts, through between the attic and the lean-to, over the door between the private dining room and the furnace room.

There was a second story over the dining room and dance hall which was used by the defendants as living quarters and was reached by an outside stairway built along the west wall of the lean-to. There was a space between the ceiling of the dance hall and the second story of two or three feet; excelsior had been packed in there to deaden the sound.

The outside walls of the tavern were constructed of mortar and field stone and the upright was of

stucco. The walls of the lean-to were cement blocks. The wall between the private dining room and the furnace room was constructed of cement blocks up to the eaves of the upright.

The oil-burning furnace was rectangular in shape, about 6 feet long, 5 feet high, and 30 inches across. The furnace was turned so that it faced east in the northwest corner of the lean-to. The smoke pipe ran from the back of the furnace to the north wall and then it took a slant from there east to the chimney. The smoke pipe at the chimney was approximately two or three inches from the rafters. The construction and design of the furnace was approved by the National Board of Fire Underwriters. It was constructed so that there was a 17-foot fire travel before gases went into the smoke pipe.

The fire occurred about midnight on the evening of May 17th. The main building was entirely destroyed, but the walls and part of the roof of the lean-to were still intact. The paint was still intact on the furnace after the fire. The furnace was used in the new building.

The cause came on for trial. A jury brought in a verdict in favor of defendants on their set-off and recoupment. Plaintiff made a motion for a new trial on the ground that the verdict and judgment were contrary to the greater weight and preponderance of the evidence; that the trial court was in error in failing to charge the jury on the defendants' contributory negligence and assumed risk in changing the plans for the installation of the furnace; that the trial court erred in failing to give the following requests to charge:

"If you find that the plaintiff's men insulated the smoke pipe, as the plaintiff claims they insulated said pipe, then you will find that the plaintiff used

reasonable care in the setting of the said smoke pipe.

"The court further instructs you that there is some evidence that indicates that it is good practice to have a smoke pipe at least ten inches or a foot away from any wood, but if you find that this furnace and heating plant was different than the ordinary heating plant, and there is testimony to that effect that it is different, and you find that it is not necessary for said smoke pipe to be installed ten inches or one foot away from wood, and that the fire could not possibly start from the installation of said smoke pipe as was installed by the plaintiff, then you will find that the plaintiff is not guilty of negligence;"

that the trial court erred in failing to permit the jury to consider evidence relative to the cutting of electric wires and in permitting two witnesses to testify as to the market value of the premises before its destruction; and that the verdict was excessive.

The principal question in this cause is the manner in which the building caught on fire. Plaintiff introduced evidence to show that the smoke pipe at the chimney was between 2 and 3 inches from the rafters and 10 inches from the rafters in front of the furnace; that there was insulation between the smoke pipe and the rafters in the form of a strip of sheet metal which was oval in shape and hung down about an inch from the rafters and left an air space of about one inch at the closest point between the rafters and the metal; that metal with an air space on each side is the best practice of installation of insulation; that after the fire had subdued, the metal insulation remained where it had been previously attached; that the construction and design of the furnace was approved by the National

Board of Fire Underwriters; that in this furnace there was a 17-foot fire travel before gases went into the smoke pipe; that much of the heat of the fuel was taken out before it went out of the furnace; that an experiment was made to determine at what temperature wood would ignite under conditions existing similar to those prior to the fire, and it was found that paper did not ignite when the heat was 950 degrees; that if the furnace was operated to full capacity, the smoke pipe temperature at the point where it left the furnace would not exceed 400 degrees; that the furnace which was controlled by a thermostat set at 70 degrees would not run at full capacity with the temperature that prevailed on the afternoon and night of the fire; that prior to the fire, there had been difficulty with the electrical wiring in the building, there had been shorts in the cookers in the kitchen, one party received an electrical shock from the water pipe while he was working in the attic, and a light bulb exploded in the kitchen; that about an hour or two before the fire, Anna Washburn, a kitchen employee, called Mr. McCausey and told him of a peculiar odor that smelled like rubber or insulation of some kind; that Harry Werkema, who had been working in the building during the day and evening, saw smoke coming out around the register which was in the ceiling near the south wall of the fountain room about an hour before the fire was discovered; that a witness went into the heater room 10 or 15 minutes before the fire was discovered and saw no smoke or fire in there at that time; that fire was first discovered in the attic; that the fire first broke through the ceiling over the kitchen; that the furnace room was the only part of the building that remained standing after the fire; and that after the fire, the rafters over the elbow of the smoke pipe still stood.

It is urged by the defendants that an issue of fact was raised on the question of the negligent installation of the smoke pipe; and in support of such claim they contend that three witnesses testified that to place a smoke pipe within one-half inch of the wood portions of the building without insulation was negligence; that after the fire an examination disclosed that the rafters and roof boards near the smoke pipe were badly charred; that one rafter was cut away so as to allow the smoke pipe to enter the chimney; that the rafter just west of the chimney was burned to the depth of one-half inch; and that there was no tin insulation between the smoke pipe and the rafter.

We are in accord with defendants' claim that there was an issue of fact as to the proper installation of the smoke pipe. We have carefully stated the evidence produced by both parties upon this subject and can come to no other conclusion than that it presented a factual question.

The next question may be stated as follows: Did the defendants offer competent evidence that the fire was caused by the defective installation of the smoke pipe? The burden of proof was upon defendants to establish such claim.

In *Holgate* v. *Chrysler Corp.,* 279 Mich. 24, we said:

"The burden of proof was upon the plaintiff, and there is no proof to show how the fire originated. We cannot presume negligence merely from the happening of the fire. *Kerr* v. *City of Detroit,* 255 Mich. 446; *Benedict* v. *Rinna,* 257 Mich. 349; *Collar* v. *Maycroft,* 274 Mich. 376.

"The most that can be said of the testimony is that it is subject to conjecture. There must be something more than conjecture. There must be proof to establish a causal connection between the cause

of the fire and the fire itself. This must be something more than a possibility. Where the proof shows, as in this case, that the fire may have occurred from any one of a number of causes, and when it is not shown to have originated from any of them, the plaintiff must be held to have failed to make the requisite proof."

That the fire might have been caused by the improperly-installed smoke pipe is not sufficient to plant a verdict upon.

In *Hewitt* v. *Railroad Co.*, 171 Mich. 211 (41 L. R. A. [N. S.] 635), we said:

"That the fire might have been set by a locomotive is undoubtedly true. But if the testimony tends to prove no more, it is not sufficient. *Clark* v. *Railway Co.*, 149 Mich. 400 (12 Ann. Cas. 559). It might have been set in various ways."

The testimony produced by defendants upon this issue is that there was improper installation of the smoke pipe and that an examination made after the fire showed that the rafters and roof boards near the smoke pipe were charred; while the plaintiff produced evidence to show that 10 minutes before the attic and second story were a mass of flames and smoke, there was no smoke or fire in the lean-to.

In our opinion decision in this case may be based upon the rule established in *Searles* v. *Railway Co.*, 101 N. Y. 661 (5 N. E. 66):

"When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must fail also if it is just as probable that they were caused

by the one as by the other, as the plaintiff is bound to make out his case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the damage was caused in consequence of the negligence and unskillfulness of the defendant is not sufficient.''

And in *Neal* v. *Railway Co.*, 129 Iowa, 5 (105 N. W. 197, 2 L. R. A. [N. S.] 905), where it is said:

''If other conclusions may reasonably be drawn as to the cause of the injury from the facts in evidence than that contended for, the evidence does not support the conclusion sought to be drawn from it. Verdicts must have evidence to support them, and the jury will not be permitted merely to conjecture how the accident occurred. In matters of proof they are not justified in inferring from mere possibility the existence of facts. *Wheelan* v. *Railway Co.*, 85 Iowa, 167 (52 N. W. 119). If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for.''

An examination of the record convinces us that the preponderance of the evidence is that smoke was seen in the ceiling of the fountain room about an hour before the fire was discovered; that about 10 or 15 minutes before the fire was discovered, there was no smoke or fire in the heater room; and that the probability of the fire starting in the furnace room is remote, if not conjectural. We recognize that the burden of establishing the origin of the fire is not upon plaintiff and in our opinion defendants have not established by the weight of the evidence that the faulty installation of the furnace was the cause of the fire.

In such a case it is the duty of the court to remand the cause to the circuit court for a new trial. In view of our decision in this case, the other issues raised by plaintiff need not be discussed. Plaintiff may recover costs.

Bushnell, Boyles, Chandler, North, Starr, Wiest, and Butzel, JJ., concurred.