THE STATE OF IOWA, on complaint of ROSA PITHAN, v. EMIL J. WANGLER, Appellant.

**Bastardy:** EVIDENCE. Evidence of the condition and experience in life of the complainant in bastardy proceedings may be considered by the jury on the question of whether, under the circumstances shown, she permitted defendant to have intercourse with her.

**Same.** The prior residence and occupation of a complainant in bastardy proceedings may be shown in a general way.

**Same.** The fact that there were other children in the family older than complainant could have no bearing on the amount to be allowed for the support of the child; and that she had lived continuously in the township of her birth could have no bearing on the question of whether defendant was the father of the child, and an admission of this evidence was therefore without prejudice.

**Same.** The testimony of complainant that she had no intimate acquaintance or familiarity with men other than her father and brothers, was competent to negative improper relations with others who might have been the father of her child.

**Same:** CROSS EXAMINATION. Where the complainant had testified that she had attended other parties with other men, prior to the one at which defendant's alleged misconduct occurred, refusal to permit defendant on cross-examination to show such fact was not prejudicial.

**Same:** PHYSICAL EXAMINATION. The stature of the complainant being open to the observation of the jury and her exact height having no material bearing on the question of defendant's intercourse, under the circumstances disclosed at the time, refusal to order a measurement of her height was not erroneous.

**Same:** INSTRUCTIONS: ASSUMPTION OF FACTS. Where the issue of legitimacy of the child is raised in bastardy proceedings the court should instruct on the subject without request; but where that issue was not in controversy in the evidence and the illegitimacy of the child was practically conceded, failure to instruct was not erroneous; and the fact that in the requested instruction by the defendant there was no indication that such an issue was involved is confirmatory of the conclusion from the record that the child's illegitimacy was not questioned.

**Same:** INSTRUCTIONS. Although an instruction in bastardy proceedings that if the jury finds by a preponderance of the evidence that defendant was the father of the child they must find him guilty, but if they find he was not the father they must consider him not guilty, while standing alone might imply an affirmative finding that defendant was not the father of the child in order to justify a verdict of not guilty, still, when read in connection with other instructions that the burden was upon plaintiff to establish by a preponderance of the evidence that defendant was the father of the child, and unless this fact was proven they should find defendant not guilty, it was not misleading or subject to that objection.

**Same.** In view of the instructions in this case as given, including those relating to the burden of proof and preponderance of evi-

dence, failure of the court to give requested instructions to the effect that complainant's testimony should not be given more weight than the testimony of defendant simply because she was a woman, and that the jury should not permit any sympathy for her misfortune to influence their verdict, was not erroneous.

**Same:** EVIDENCE: SUFFICIENCY. The evidence in this action is reviewed and held to sustain a verdict for plaintiff notwithstanding the inconsistencies and claimed improbabilities in her testimony.

*Appeal from Crawford District Court.*—HON. F. M. POWERS, Judge.

WEDNESDAY, JULY 5, 1911.

ON a complaint of Rosa Pithan, filed in the lower court charging defendant with being the father of her bastard child, the defendant was found guilty, and was ordered to pay to complainant $100 per annum for the support of such child.. From this judgment the defendant appeals.—*Affirmed.*

*W. A. Helsell,* for appellant.

*P. J. Klinker,* County Attorney, and *Conner & Lally,* for the State.

McCLAIN, J.—There was evidence tending to show that on the 21st day of June, 1908, the defendant, who had taken the complainant home in his buggy from a dance, had sexual intercourse with her in the buggy near complainant's home, and that her child born in March following was the result of this intercourse.

The assignments of error relate to rulings of the court in the admission and exclusion of evidence; instructions given to the jury, and the sufficiency of the evidence taken as a whole to sustain the verdict.

I. Complainant, as a witness, having testified that

she was nineteen years old when her child was born, and that she herself was not the oldest child in her father's family, was asked how many of her father's children were older than herself, and over defendant's objection she was allowed to testify that there were two older. She was also allowed over timely objection to testify that she had never been away to school, and had never lived in any other place than the township in which she was born. The complaint as to the rulings permitting the witness to testify to· these facts is that they were irrelevant and immaterial, and their effect was to indicate that the complainant was immature and inexperienced, and that they were therefore calculated to excite the sympathies and appeal to the prejudices of the jury.

1. BASTARDY: evidence.

It seems to us, however, that the condition and experience in life of the complainant was a matter which the jury might properly consider as bearing upon the question whether in fact complainant permitted the defendant under the circumstances ˙hereinafter to be more fully stated to have intercourse with her. However this may be, after the witness had been allowed to testify without objection that she was not her father's oldest child, it could not possibly have been prejudicial to defendant that she was allowed to state that there were two children older than herself.

The other questions objected to related in a general way to complainant's prior residence and occupation. General questions of this character are, as we understand it, always permitted. The cases relied on for appellant are clearly not in point. It has been held in this court that in a civil case for the recovery of damages it is not competent to show the size of the family of the injured person as bearing upon the damages to be recovered. *Beems v. C., R. I. & P. R. Co.,* 58 Iowa, 150; *State v. Rutledge,* 135 Iowa, 581.

2. SAME.

But plainly in this case the question as to the num-

ber of children of complainant's father who were older than the witness could have had no bearing nor effect in the determination of the amount to be allowed for the support of the complainant's child, and under the record it is impossible to imagine that the facts as to the complainant having lived continuously in the township of her birth, and not having been away to school, could have had any effect with the jury in influencing the conclusion to be reached by them as to whether defendant was the father of her illegitimate child. Clearly the rulings of the court if erroneous, were not prejudicial to the defendant.

3. SAME.

The testimony of complainant as a witness given over objection for defendant that no other man than defendant aside from her father and brothers had ever kissed or hugged her was competent as negativing improper relations with other men who might have been the father of her child.

4. SAME.

During the cross-examination of this witness she was asked whether she had gone to dances before and after the time in question with other men than the defendant, and an objection to such questions was sustained. In this ruling there could have been no prejudicial error, for it appeared from complainant's testimony that she had attended other dances prior to the one in question, and that she had gone home from a dance with another man a week subsequent to the time in question. If it was competent for the defendant to bring out in cross-examination the fact that complainant had attended other dances, then the fact was plainly apparent on the record by complainant's own testimony, and the defendant had all the advantage which could have accrued to him from an answer to the question propounded.

5. SAME: cross-examination.

II. Having testified that the intercourse with defendant took place in a buggy, the complainant was asked on cross-examination to remove her hat, and stand against

the wall, and allow her height to be measured before the
jury. The court sustained an objection to
this proposition, and refused the request
of defendant that an order be made requiring the complainant to submit to being measured as to her height by
some disinterested person to be appointed by the court in
order that her exact height thus obtained might be made a
matter of record. At this time there was nothing to indicate the size of the buggy in which the intercourse was
charged to have taken place, and there was no claim on the
part of the defendant that complainant was of any such
extraordinary height that intercourse in a buggy would
have been impossible. Later in the case evidence was introduced for the defendant tending to show that the buggy
was in fact of small dimensions, but at the time complainant was being cross-examined it did not appear that the
particulars as to her height had any bearing whatever on
the credibility of her testimony. This is especially true
in view of the statement of counsel made in the lower
court in this connection that by observation he could see
complainant must be five feet eight inches in height and
about one hundred and sixty pounds in weight. Surely
her height was not so extraordinary, therefore, as to make
an exact record of it material to the proper disposition of
the case either in the lower court or on this appeal. We
have no occasion now to consider the rulings of this court
or other courts as to the right to have a physical examination made in order that a physical condition having a material and controlling effect on the right of recovery shall
be made apparent to the jury. In the first place, the
height of complainant was open to the jury's observation,
and no physical examination was necessary to make it substantially apparent; and, in the second place, the exact
height of complainant had no material bearing under the
evidence as it stood at the time defendant's requests were
made. The impossibility of such intercourse taking place

*6. SAME: physical examination.*

in a buggy might have been argued to the jury without any specific record being made as to complainant's exact height.

III.   Assignments of error are made as to the giving of several instructions, but the only one of these which is argued relates to an instruction in which the jurors were directed as follows: "If you find by a prepon-derance of the evidence that the defendant is the father of the illegitimate child of Rosa Pithan, you must find him guilty; but, if you find that the defendant is not the father of such child, you must find the defendant not guilty."

7. SAME: instructions: assumption of facts.

The first objection to this instruction is that it assumed the illegitimacy of the child, but as to that fact there was not the slightest controversy during the trial.   The fact was practically conceded by the defendant and none of the instructions asked by him indicated that he expected or desired to have any issue on that point submitted. Of course if there had been any such issue raised by the evidence, the court should have instructed upon it without request; but the fact that in the instruction asked there was no indication that any such issue was involved confirms the conclusion which must be drawn from the entire record of the trial that the defendant at no stage of the proceedings questioned the fact of illegitimacy.

Another objection to the instruction is that it seems to require an affirmative finding that the defendant was not the father of the child in order to justify a verdict of not guilty.   Standing alone, the instruc-tion is in this respect objectionable, for the jury should have returned a verdict of not guilty upon finding that the preponderance of the evidence was not in favor of the plaintiff.   But in another instruction the jurors were specifically told that the burden was upon the plaintiff to establish by a preponderance of the evidence that defendant was the father of the child, and that, unless

8. SAME: instructions.

this fact was so proven, they should find the defendant not guilty. The two instructions were not inconsistent. It is true, as stated in the second clause of the instruction quoted, that, if the jury found the defendant not to be the father of the child, they must find him not guilty. The thought that the jury should also find the defendant not guilty if plaintiff failed to establish by a preponderance of the evidence that the defendant was the father of the child was clearly expressed in the other instruction. It is not possible that the 'jurors could have been misled by the instruction quoted into thinking that they could not find the defendant not guilty unless they affirmatively found that the defendant was not the father of the child.

IV. The court failed to give two instructions asked for the defendant to the effect that complainant's testimony should not be given more weight than the testimony of the defendant simply because she was a woman, and that the jury should not permit any sympathy for the misfortune of the plaintiff to influence their verdict. In view of the instructions given to the effect that defendant was to be presumed innocent until the jurors were convinced by a preponderance of the evidence that he was guilty, and that the mere fact of complainant being the mother of an illegitimate child with the paternity of which defendant was charged, was of itself no evidence of his guilt, and further instructions as to the meaning of the terms "burden of proof" and "preponderance of the evidence" as used in the instructions, we can not think that the defendant was in any way prejudiced by the refusal to give the instructions asked. Certainly the jurors must be presumed to know without specific instruction that of itself the testimony of the complainant should not be given more weight because she was a woman, and that they should not allow their sympathies with the misfortune of the complainant to lead them into the giv-

ing of a verdict against the defendant without a preponderance of the evidence against him.

V.   The most serious contention for the appellant is, however, that the evidence for the plaintiff was so absurd and self-contradictory that the jury should have been directed to disregard it and should have set aside the verdict for insufficiency of the evidence.   In support of this proposition we are cited to the case of *Graham v. C. & N. W. R. Co.,* 143 Iowa, 604, in which a verdict for the plaintiff was set aside on the ground that the story told by witnesses for the plaintiff was incredible and unworthy of belief.   There is no such situation presented by the evidence in this case. The complainant testified that defendant, with whom she had had a slight acquaintance for about two years, danced with her several times on the evening in question, and also danced several times with her sister, who accompanied her, and with other women; that on learning that she and her sister had walked to the dance a mile and a half or two miles, and that they had no other company, he proposed to take them home in his buggy; that he proposed they start between twelve and one o'clock, while supper was in progress, although there was to be more dancing after supper; that the sister excused herself from accompanying him and the complainant on the ground that she had found other company; that defendant, taking complainant in his buggy, proceeded almost immediately to caress her with familiarity, and to propose and insist upon sexual intercourse, promising to marry her if pregnancy resulted; that, when they reached the gate beside the highway at her father's home, defendant stopped the buggy, and they proceeded to have sexual intercourse in the buggy; that soon afterward complainant's sister and the young man accompanying her came up behind them in the highway, whereupon defendant drove a little further along the road across a bridge, and proceeded .to have further

10. SAME: evidence: sufficiency.

sexual intercourse with complainant still in the buggy; that defendant thus remained upon the person of complainant for more than an hour, and then assisted her from the buggy at the gate and allowed her to go into the house, where she found her sister in bed and asleep; that by the time she reached the house daylight was approaching; and that she never saw the defendant again nor had any communication with him even after she became aware of her pregnancy in December following until her child was born, when, at the suggestion of an attorney (not the attorney for plaintiff in this case), her father called upon the defendant, who then admitted having taken complainant home, but denied that there was any occasion to marry complainant, and refused to do so. Defendant and the young man who accompanied the sister testified that about daybreak defendant overtook the other on the highway, and gave him a ride. The alleged inconsistencies in the story as developed by the testimony of the complainant and witnesses in her behalf relate to the improbability that complainant should have yielded to defendant who was a casual acquaintance, and not a suitor; that there was not time enough between defendant's arrival at the dance and the alleged time of his departure with complainant for him to have danced as often with complainant and others as her testimony indicated; that the testimony of complainant is inconsistent in other respects with that of the witnesses in her behalf with reference to the time when defendant and complainant left the dance; and, finally, that under the evidence it was incredible that the sexual intercourse could have been had in a buggy of the size described by defendant, and a witness who testified as to the measurements of the buggy subsequently made. It is also insisted that the failure of defendant to again seek the complainant and her failure to communicate with him after she knew of her condition until her child was born render complainant's entire story incredible. It is quite

evident that the inconsistencies referred to are argumentative rather than conclusive. They might well have been, as they no doubt were, the subject of forcible comment before the jury on the part of defendant's counsel, but they can not be regarded by us as conclusive that the material portions of complainant's testimony, corroborated as she was in many particulars by other witnesses, were untrue. The mere fact that there were some discrepancies in the evidence as to time and surrounding conditions would not warrant us in saying that complainant's story was an entire fabrication.

As to the impossibility of sexual intercourse between defendant and complainant in such a buggy as defendant described, it is sufficient to say that the impossibility, if such might be, was based entirely upon uncorroborated testimony of defendant that the buggy which he and his witness measured was the same buggy in which he drove the complainant to her home. It is needless to say that such conclusive impossibility could not be made out by such testimony of defendant without other testimony as to what actually happened. We are not justified in assuming as a matter of judicial cognizance that it is impossible for sexual intercourse to take place between adults in a single buggy, nor that it is entirely incredible that defendant should have remained in the buggy on complainant's body for more than an hour.

In view of the many minor inconsistensies in the testimony of plaintiff's witnesses and the circumspect and quite persuasive testimony of two witnesses for the defendant, who appear to have been entirely disinterested, that defendant was at the dance until after 2 o'clock, a fact wholly inconsistent with the entire story of complainant and her witnesses, the writer of the opinion and Mr. Justice Deemer feel that we should as jurors have reached the conclusion that complainant's case was not made out by a preponderance of the evidence, and that the account

·of the whole transaction given in defendant's testimony was more reasonable and credible, but the other justices are of opinion that there was a preponderance of the evidence for the complainant. However harsh and unreasonable the finding of the jury in the lower court may seem to be from defendant's point of view, it nevertheless does appear to a majority of the judges of this court that there was testimony, sufficient to sustain a verdict for the plaintiff, and it is not our function to interfere with the finding of the jury based upon the respective credibility of the accounts given by the different witnesses as to the facts.

The judgment of the trial court is therefore *affirmed*.