William T. Dufree, Administrator of the Estate of Charles Hicks, Appellee, v. Wabash Railroad Co. Appellant.

**Railroads:** TRESPASSERS: NEGLIGENCE: EVIDENCE. A deaf person is guilty of gross negligence in walking upon a railway track, and trainmen may assume that he will exercise his faculties to avoid danger and are under no obligation to stop the train until his peril becomes apparent; but when it becomes apparent that such person is oblivious to his danger then it is the duty of trainmen to use all reasonable care to avoid injuring him. Under the evidence in this case the question of the engineer's negligence in failing to stop his train after discovering decedent's peril was for the jury.

**Same:** DAMAGES: EVIDENCE. Where the earnings of a decedent, in an action for his death, have been shown on direct examination, it is competent to show on cross-examination that he never saved any of his earnings, as bearing on the injury to his estate by reason of his death; and in explanation of his lack of property it may be shown that he had a family dependent upon his earnings.

**Same:** EVIDENCE. Where the manner of decedent's death was not in dispute exclusion of the coroner's verdict, not inconsistent with such evidence, was not prejudicial.

*Appeal from Davis District Court.*—Hon. M. A. Roberts, Judge.

Friday, June 7, 1912.

Action for damages for the negligent killing of plaintiff's intestate. There was a verdict for the plaintiff for $1,400, and defendant appeals.—*Affirmed.*

*James L. Minnis* and *Claude R. Porter* for appellant.

*T. P. Bence* and *Frank A. Messer* for appellee.

EVANS, J.— The accident under consideration occurred at 3 p. m. on the 1st day of August, 1908. The intestate was walking upon defendant's track going south towards Bloomfield. The train which struck him was also going south. The day was clear, and no distracting circumstances appear. The intestate was very deaf. The circumstances immediately preceding the accident are stated in substance in appellant's brief as follows: "That the deceased was a trespasser, using the railroad track of defendant as a thoroughfare, without leave or license, is conceded in both the pleadings and testimony; that he was very hard of hearing—in fact, almost totally deaf—which was unknown to the trainmen of defendant company. He was walking down the center of the track with his back to the north, from which direction the train was coming. It was a bright, clear day, in the middle of the afternoon, and there was nothing unusual or out of the way in the appearance of the deceased to attract the attention of the engineer. The engineer, one of the oldest and most experienced employees of the defendant, riding in his accustomed place in his engine, had just come down a grade and to a straight level piece of track, when about 1,200 feet ahead of him he saw a man, the deceased, walking down the track and about 500 feet south of a second bridge or trestle, which the engineer knew he must pass over with his train. The train was running about thirty miles per hour, and the engineer, with his train, passed over the first bridge, called in the evidence Fox River Bridge, and the noise of going over the bridge, he thought, would alarm him. The train then ran across a fill or embankment, and then across the second bridge. All of the time the engineer had kept his eye on the deceased, expecting him to make some move, and having run almost over the second bridge, the engineer concluded he had paid no attention to the oncoming train, and just as he was leaving this bridge, and while 500 feet and over from the deceased, sounded the danger alarm. At

`this point the fireman commenced to ring the bell, and both the whistling and the bell ringing were continued until the deceased was struck. The engine ran about 200 feet thus, when both engineer and fireman concluded he was not going to get out of the way, when everything was done that could be done to stop the train, but to no avail."

I.   The intestate was a trespasser. Not only so, but, in view of his infirmity, his conduct was gross negligence. It is conceded that the defendant owed him no duty until

I. RAILROADS: it had become apparent to the engineer that trespassers: he was insensible to the approach of the train. negligence: evidence. The important question in the case is: Was there sufficient evidence to go  to the jury that the engineer negligently failed to stop his train after it had become apparent to him that the deceased would not leave the track?   The engineer had a right to assume that the trespasser was in the possession of his senses and faculties, and that as a reasonable person he would step out of the way of harm before the engine reached him; and he was under no duty to attempt to stop the train until it was otherwise apparent to him. *Thomas v. Ry. Co.*, 114 Iowa, 169; *Baker v. Railway Co.*, 95 Iowa, 163; *Rutherford v. Railway Co.*, 142 Iowa, 744.   On the other hand, whenever it became apparent to the engineer that the trespasser was oblivious of his danger and would not be likely to save himself on that account, then it became the duty of the engineer to make all reasonable effort to avoid injury. *Kelley v. Railway Co.*, 118 Iowa, 387; *Gregory v. Railway Co.*, 126 Iowa, 230; *Clemans v. Railway Co.*, 128 Iowa, 396.

If we had to find the facts in this case, some of us might hesitate to hold the engineer guilty of negligence under the evidence.   But there is not such an absence of evidence that it can be said as a matter of law that a verdict should have been directed.   It is made to appear

that the engineer watched the intestate for a distance of 1,200 feet, and that he saw no sign from him, and that he speculated constantly whether he had discovered the approach of the train or not. As against this it is true, it was made to appear by the undisputed testimony of several engineers that it is a common custom among tres-- passers on a railroad track to wait until a train is fifty or one hundred feet from them before paying any atten- tion to its approach. This fact was entitled to considera- tion as tending to exonerate the engineer for failure to stop his train in time. The circumstance, however, was one for the consideration of the jury on the question of fact. Under the showing made it is our conclusion that the case was one for the jury. The defendant's motion for a directed verdict was therefore properly overruled.

II. Complaint is made by appellant because the plaintiff was permitted to prove that the family of the deceased consisted of his wife and three children. It is said that this evidence was admitted in viola-

2. SAME: damages: evi- dence.

tion of the rule established in *Beems v. Rail- way Co.*, 58 Iowa, 158. In the case before us the evidence was received on redirect examination of a witness and was explanatory of matters developed upon the cross-examination of the same witness. It was made to appear by the direct examination of such witness that the decedent was earning $3 to $4 per day. He was only twenty-three years old. On cross-examination it was shown that he had saved none of his earnings and had no property. This latter circumstance was proper for the consideration of the jury as bearing upon the injury to the estate of the decedent by reason of his death. It follows, we think, that it was a proper explanation of the absence of property saved to show that he was supporting a dependent family on such earnings. The evidence was received for that purpose alone, and it was not error.

III. The appellant complains because the trial court

refused to receive in evidence the verdict of the coroner's jury. We have held that a coroner's verdict is competent evidence for some purposes. *Metzradt v. Insurance Co.*, 112 Iowa, 526. The offer made by defendant, however, in the court below, was not the coroner's verdict alone. It offered "Exhibit I," which consisted of the verdict and other papers including the evidence of witnesses. Such other papers are not before us, and we can not determine whether they were admissible or not. It is quite evident, also, that a coroner's verdict could render little service to the defendant in this case. The manner of decedent's death was not in dispute. It was testified to by eyewitnesses without conflict. The coroner's verdict presented nothing inconsistent with such evidence. Its exclusion therefore could work no prejudice.

*3. SAME: evidence.*

The foregoing disposes of the principal questions argued. We find no error in the record.

The judgment below must therefore be *affirmed*.