EDNA E. NICOLL, Appellee, v. EMMA R. SWEET, Administratrix, et al., Appellant.

**Negligent death:** CAUSE OF DEATH: EVIDENCE. Decedent was injured by a falling cornice from a building owned by defendant and shortly thereafter died of pneumonia. *Held,* that although decedent may have been in poor health such fact was not inconsistent with plaintiff's theory that the pneumonia, which was the immediate cause of death, was the direct result of the physical injury; and that there was sufficient evidence that the injury was the inciting cause of the pneumonia, and also of defendant's negligence, to take both questions to the jury.

**Same:** INSTRUCTION. Where the court fully and correctly instructed that the burden was on plaintiff to show that the injury of deceased caused the pneumonia, and upon failure to sustain this burden she could not recover, the refusal of a like instruction was proper.

**Negligent death:** EVIDENCE: DEPENDENT CHILDREN. In an action for negligent death the plaintiff may show the number of children of deceased, as an incentive for thrift and the accumulation of property, the same as it may be shown whether he was married or single.

**Same:** INSTRUCTION. An instruction that the mere fact that deceased left surviving children was not of itself ground for recovery of damages, but if plaintiff was otherwise entitled to recover that fact might be considered as bearing upon his incentive to industry, was not conflicting, but tended to restrict the effect of the evidence and was not prejudicial to defendant.

**Same:** EXCLUSION OF EVIDENCE: HARMLESS ERROR. Evidence of the statement of deceased that he could not obtain life insurance because of the condition of his health was admissible, as bearing upon his condition of health and earning capacity; but as these condi-

tions were fully inquired into its exclusion in this instance was not prejudicial error.

**Same:** EVIDENCE: PAIN AND SUFFERING. While an administrator cannot recover for pain and suffering by deceased, still complaints of pain and suffering made by deceased soon after his injury are admissible as bearing upon the nature, extent and location of his injuries.

**Same:** EXCESSIVE DAMAGES. Where deceased was a boiler maker earning from $56.00 to $108.00 per month, and had an expectancy of thirty-six years, a verdict for $8,000.00 was not excessive, although he may not have been a man of robust health.
PRESTON and DEEMER JJ., dissenting.

*Appeal from Benton District Court.*—HON. C. B. BRADSHAW, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION at law to recover damages against the estate of S. S. Sweet, deceased, on account of the death of one Walter H. McNulty. Verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*Dawley & Wheeler* and *Tom H. Milner,* for appellants.

*D. L. Johnson* and *C. W. E. Snyder,* for appellee.

WEAVER, C. J.—McNulty was injured by the falling of a cornice into the public street from a building owned by Sweet. Eight days after the accident, McNulty died of pneumonia, which plaintiff alleges was caused by the injuries so received, and the claim of damages is based upon that theory.

It is strongly contended upon the part of the appellant that the record shows no evidence from which this fact could be found in favor of plaintiff. It is true that the testimony tends to show that McNulty was not in robust health at the time of his injury, that he had recently suffered from bronchitis and had some indications of weakness of the lungs; but the

1. NEGLIGENT DEATH: cause of death: evidence.

fact of ill health or physical weakness, if established or con-
ceded, is by no means inconsistent with plaintiff's theory
that the pneumonia which was the immediate cause of death
was the direct result of the blow received from the falling
brick. Indeed, such weakened condition, if it existed, may
have rendered the deceased an easier victim of the fatal dis-
ease; yet if there was evidence for the jury that pneumonia
was the direct result of the injury, and such injury was fairly
chargeable to the negligence of Sweet, the state of the de-
ceased's health would in no manner affect the right of action
on the part of his administratrix, though it may have bearing
on the amount of the recovery. That there was evidence to go
to the jury on both questions is scarcely open to doubt. On
the matter of the alleged negligence, the fall of the cornice
doubtless presented a case for applying the doctrine of *res
ipsa loquitur*, to say nothing of other evidence bearing upon
the situation. Concerning the relation of cause and effect
between the injury received and the disease of which the
intestate died, it may be said that the medical testimony
on the part of plaintiff tended to show that the pneumonia
was of traumatic origin; that is, pneumonia, the inciting
cause of which was some physical violence or bodily injury.
It is also shown that, from such an injury as the deceased
suffered, pneumonia is likely to follow as a natural conse-
quence. No other injury or efficient cause for the disease is
suggested, and the question thus presented is one of fact and
not of law. *Brownfield v. Railroad Co.*, 107 Iowa, 254; *Leh-
man v. Railroad Co.*, 153 Iowa, 124.

The jury was fairly and correctly instructed upon this
proposition. The defendant's request for an instruction that

2. SAME: instruc-  the burden was upon the plaintiff to show
tion.              that the injuries to McNulty did cause pneu-
monia, and if she failed in this respect she could not recover,
stated a correct legal proposition, but it was fully covered
and stated in the instructions which the court gave upon its
own motion.

The principal debatablé question upon this appeal is the following: The surviving wife of McNulty, testifying as a witness, was permitted to say, over the objection of defendant, that the deceased left a family consisting of a wife and four children ranging from one to ten years of age. Referring to this feature of the evidence, the court told the jury that, if they found the plaintiff entitled to recover, the amount of damage to be assessed in favor of the estate of the deceased ''is not to be increased by reason of his having children which he left surviving him; evidence of his children and the number thereof being admitted by the court as having bearing upon the question of inducement or incentive to habits of industry in case the deceased had lived.''

3. SAME: negligent death: evidence: dependent children.

Error is assigned upon the admission of the testimony and upon the instruction to which we have referred. It is to be admitted that authority is to be found for the position of the appellant, and cases are not wanting in which recoveries in actions for damages sustained by reason of the death of a person have been set aside because of admission of proof that the deceased left wife and children surviving him. It is a matter, however, on which the precedents are not in harmony, and a majority of this court, after quite careful deliberation, is of the opinion that the better reason is with the rule holding the evidence competent. Practically the only objection of any plausibility to its admission is that its tendency is to excite the sympathies of the jurors and induce undue liberality in the assessment of damages. But, as is well known to all persons who have observed the course of litigation in matters of this kind, it is utterly futile to hope to keep the fact from the knowledge of the jury. More often than otherwise the widow and children are in the courtroom. If not, the facts concerning the victim of a fatal accident, his family, and their circumstances are public property, upon every tongue; they are mentioned in public print, talked about on the street corners and places where men meet and

congregate; they crop out incidentally in the courtroom; and, even though the evidence be rigidly excluded on the trial, no juror enters upon the consideration of his verdict in ignorance of the actual situation in this respect. Even as a mere matter of protection of the interests of the defendant, it is at least an open question whether it is not better that the testimony of all these conditions surrounding the deceased at the time of his injury should be admitted under the sanction of an oath and its bearing and effect regulated and controlled by appropriate instructions. If it be said that a juror's sympathies may control his actions even to the extent of disregarding the court's instructions, that suggestion, if sound, is no less applicable where the influencing fact comes to the juror's knowledge from sources other than the testimony or by absorption from the atmosphere in which the case has been tried. But the average jury is not made up of weaklings. Its members as a rule have an intelligent conception of their duties and obligations.

It is correct to say, as does the appellant, that the only true measure of recovery for the death of an individual is the value of his life to his estate, had he not come to such untimely end. It is hardly too much to say that this rule is vague, uncertain, and speculative, if not conjectural, but it is the best which judicial wisdom and experience have yet been able to formulate. No evidence is possible of the time which deceased would have lived but for the injury complained of. Had he avoided this injury, death may have met him the next day, week, or year in some other form. In business he might have become a phenomenal success and accumulated millions, or he might have lived to old age and died a pauper. From being a man of good habits and prudence and industry, he might have become a spendthrift or a tramp, or if a man of dissolute habits he might have reformed into an efficient and prosperous citizen. But the demands of justice will not tolerate the idea that human life may be extinguished by the tort of another without the wrongdoer being held to answer

therefor in damages, and the rule we have stated is the one which has been devised for this purpose. The principle which underlies it is of unquestionable soundness, but the difficulty which besets its practical application is in the fact that it calls for an estimate or conclusion which must be arrived at by a balancing of mere probabilities and possibilities which we deduce by way of inference from the age, character, habits, condition, education, employment, surroundings, and apparent capacity of the deceased. Fairness to the beneficiaries of the estate on the one hand and of the defendant on the other require that the jury be put in possession of all the facts having the slightest legitimate bearing upon this intricate problem. It is concededly the law of this state that in such case the plaintiff may show that the deceased was a married man. *Wheelan v. Railroad Co.,* 85 Iowa, 178. This is said to be competent because "it may fairly be assumed that a married man will be more frugal and industrious and hence will accumulate a larger estate than a single man." *Beems v. Railroad Co.,* 58 Iowa, 158.

In *Donaldson v. Railroad Co.,* 18 Iowa, 290, the question presented in the case now before us was raised in the following manner. The action like the one at bar was brought by the administrator to recover damages for the death of his intestate. Plaintiff offered testimony showing the family of the deceased and their respective ages, as well as his occupation, earnings, and accumulations. The defendant objected thereto on the ground that the inquiries were improper, immaterial, and not the correct method for the ascertainment of the damages. The trial court instructed the jury that, if plaintiff was found entitled to recover, he would be entitled to recover such damages as the estate of deceased had suffered by reason of his death, and nothing should be allowed on account of his pain and suffering before death or for the grief and distress of the family or for their loss of his society. Passing upon the defendant's assignment of error in this respect, this court then said: "When a jury is thus guarded

against the allowance of damages for improper causes, it would seem that no prejudice would result if the jury should be fully advised of the exact situation of the deceased, his occupation, annual earnings, age, health, habits, family, and estate. Many of these, and possibly other facts, may have just influence in determining the pecuniary damage to the estate. We would not be understood, however, as determining that evidence as to the number and ages of his children is strictly proper.'' It would seem from this quotation that, while the statement of facts and argument indulged in by the court indicated its view that the testimony was admissible, yet, as in any event its admission was not prejudicial, the question whether it was technically or ''strictly proper'' was left undecided.

In the later case of *Beems v. Railroad Co.*, 58 Iowa, 150, three members of the court held to the view that such evidence was inadmissible, while the other two, Beck and Rothrock, JJ., reached the opposite conclusion. Somewhat singularly the *Donaldson* case was not referred to and was apparently overlooked. Indeed, there was no discussion of authorities except a brief mention of *Simmonson v. Railroad Co.*, 49 Iowa, 87, where it was held generally that the jury was entitled to know all the circumstances surrounding the deceased affecting his capacity and disposition for earning a living. Since that time the *Beems* case has been cited in a criminal case *(State v. Rutledge,* 135 Iowa, 581) and a bastardy case *(State v. Wangler,* 151 Iowa, 555), but under circumstances so foreign to those with which we are now dealing that they cannot be said to be in point. As applied to the question before us, we think it must be said that the authority of that precedent has not only been discredited but abandoned.

Bearing upon that proposition, let us first notice that in *Hunt v. Railroad Co.*, 26 Iowa, 363, *Simmonson v. Railroad Co.*, 49 Iowa, 87, and *Moore v. Railroad Co.*, 47 Iowa, 692, we held it competent for the plaintiff in a personal injury case

VOL. 163 IA.—44

to prove that the injured person was a poor man and had a family dependent upon him for support. In the *Simmonson* case it was said: ''The jury was entitled to see the deceased as he was viewed with reference to his prospective capacity and disposition for earning and saving money. No data could be given them for a computation. Taking deceased as he was shown to them, it was for them to say, from their knowledge of business life and all its contingencies, . . . what was the pecuniary injury sustained . . . with reference to his prospective estate.'' In this connection it is further said that either party might have shown his habits in regard to the use of intoxicating liquor ''and in regard to anything else which affected his prospective savings and earnings.''

In *Stafford v. Oskaloosa*, 64 Iowa, 258, the question was again raised, and, after citing approvingly the *Hunt, Moore,* and *Simmonson* cases, the court proceeds to notice the *Beems* case as follows: ''But in the subsequent case of *Beems v. Railroad Co.*, 58 Iowa, 150, it was held by a majority of the court that evidence of the number of the intestate's family, though offered simply as a circumstance tending to stimulate his industry and economy, was incompetent. The majority of the court, as now constituted, are now content to adhere to the holding in *Hunt v. Railroad Co.* and *Moore v. Railroad Co.*, and the grounds on which the holding is placed.''

In the later case of *Fish v. Railroad Co.*, 96 Iowa, 707, where question was raised upon the competency of evidence showing accumulations of the deceased, reliance was placed by the defendant upon the *Beems* case, where the majority seems to class proof of this character with proof of the family relations of the deceased and holds both incompetent. Upon this objection the court again remarks: ''All that can be said of that case is that it denies the right of showing accumulations with a view to enhance damages because of it, but the case recognizes the right to show that deceased was dependent on his earnings, and had no money, as a probable inducement

to industry. . . . It is not intended by what is said in this opinion to commit this court, as now organized, to an approval or disapproval of the rule of *Beems v. Railroad Co.,* should the question therein as to such evidence hereinafter arise."

In *Lowe v. Railroad Co.,* 89 Iowa, 420, evidence was admitted apparently without question that the deceased was married, left no estate, and that his earnings had been applied to the support of his wife and family; and the court in its opinion cites these facts as circumstances to be considered in estimating the value of his life to his. estate.

In the *Wheelan* case, 85 Iowa, 167, the court cites the *Beems* case in support of the proposition that, in finding the value of the life of a man to his estate, evidence of his age, habits, health, means, business, and his married or single estate is admissible.

In *Dupree v. Railroad Co.,* 155 Iowa, 544, the plaintiff having shown the wages earned by the deceased, it was developed on cross-examination that he was saving none of his earnings and had no property. On redirect examination plaintiff was permitted to show that deceased was supporting a wife and three children. The defendant assigned error upon this ruling and cited *Beems v. Railroad Co.* in support of its position. The authority of that precedent was not discussed by the court, for we held that the evidence was admissible in any event as an explanation of the fact that deceased was not making any savings. It is difficult, however, to understand upon what theory the explanation would be material or pertinent if the rule of the *Beems* case is sound or if the fact itself has no legitimate bearing on the question of the value of the life of the deceased to his estate.

It is evident from the foregoing that this court has never directly or distinctly reaffirmed *Beems v. Railroad Co.,* so far as it relates to this question but, on the contrary, has shown a distinct disinclination to do so, and that taking our cases along this line as a whole, and the reasoning upon

which they have been decided, they may fairly be said to affirm the competency of the evidence admitted by the trial court.

For reasons already suggested, most of the adjudicated cases from other states are not specially helpful in this discussion, but there are some in which principles quite analogous to those we here approve have been applied. For example, in *Perry v. Lansing,* 17 Hun, 34, it was held proper to admit such evidence on the theory that it was proper for the jury to be advised in a general way of the situation and condition in life of the party injured. In Missouri, contrary perhaps to the general trend of cases in that state, it was held admissible to show the existence of wife and family, not as in itself a ground of damage, but to inform the jury of the person's condition and situation in life. *Winters v. Railroad,* 39 Mo. 468.

The state of Alabama has a statute which its courts have so interpreted that, if it appear that the deceased consumed his wages in support of his family and was making no accumulations, the measure of recovery is limited to the loss so occasioned, but, if he was making any savings, then the administrator may recover, as in this state, the entire present value of the estate which the deceased would probably have accumulated had he lived. *Railroad Co. v. Jones,* 114 Ala. 519 (21 South. 507, 62 Am. St. Rep. 121), and cases there cited. Applying this statute, the court in the cited case says: ''As a circumstance aiding the solution of this question, it was competent to show how many and what dependents there were and their ages.''

The Nebraska statute is unlike our own in that the right of action is given for injury to the support of dependent relatives, but the reasoning of that court upon the competency of evidence tending to show the extent of such loss is very applicable in cases like the one at bar. There, in an action by a father for the death of a son, the court says that the fact of the existence of a mother and other children was entirely

admissible, "not as a direct ground for the jury's action, but as showing what the deceased was doing and likely to do to make his life pecuniarily valuable to plaintiff." If such fact is evidence of what the deceased was doing or likely to do to make his life of pecuniary value to the parent, it is no less competent to show the pecuniary value of his life to his estate, where the right of recovery is for its benefit.

It is held in Wisconsin that in an action by the widow of the deceased or for her benefit, although she is entitled to recover only for the pecuniary damage resulting to herself, she may prove the number and ages of her children. *Hamann v. Bridge Co.*, 136 Wis. 39 (116 N. W. 854).

It is to be said also that the precedents from other states relied upon by the appellant holding it incompetent to show the fact that the deceased left a family of children are equally unanimous in holding it improper to show that he was a married man or otherwise show to the jury the facts as to his domestic or family relations. *Railroad Co. v. Collinsworth*, 45 Fla. 403 (33 South. 513); *Stockton v. Frey*, 4 Gill (Md.) 406 (45 Am. Dec. 138); *Railroad Co. v. Camp*, 81 Fed. 808 (26 C. C. A. 626); *Sesler v. Coal Co.*, 51 W. Va. 327 (41 S. E. 216). The majority opinion in the *Beems* case departs from this rule so far as relates to the married condition of the deceased, and we have committed ourselves to the same view in several cases, as already noted.

But it is scarcely possible to conceive of any good reason for admitting proof that defendant had a wife, which does not equally apply to the fact that he had children. In the *Beems* case both majority and minority justified the admission of the former upon the sufficient ground that "from observation and experience it may fairly be assumed that a married man will be more frugal and industrious and hence will accumulate a larger estate than a single man;" but, having said this, the opinion proceeds with palpable disregard of the logic of the situation and of its own concession to hold it improper to show the existence of children and state as a

reason therefor that "observation and experience do not teach that one's income is likely to increase in the same ratio as the number of his children." It would have been scarcely less pertinent to have said that observation and experience do not show that, other things being equal, a married man lives longer than a single man. It is sufficient answer to either to say that no one contends otherwise, and the quip with which the competency of the testimony is there turned aside does not partake of the character of argument. If it be true (and it stands admitted in this court) that proof that deceased was a married man is of some probative force in estimating the probable value of his life to his estate because the responsibilities of wedlock tend to stimulate him to industry, prudence, and economy, shall the court shut its eyes to the equally patent fact that a child or children in the family, whether one or many, has an equal, if not greater, influence in the same direction? It may be said that the dependent members of a man's household may be so numerous as to exhaust his earnings and decrease rather than increase the likelihood of his accumulating an estate. This is true, and in such case the defense is in no position to complain of the admission of the testimony. The writer has been unable to find that any court in any other jurisdiction has drawn any distinction between the admissibility of proof that the deceased in such cases was a married man and proof that he left children.

We have already called attention to the peculiar difficulties surrounding the presentation and trial of these cases and to the fact that, when all is said, the issue goes to the jury for what we have called a balancing of the probabilities and possibilities of the extent of that financial success, if any, which would have attended the life of the deceased, had his career not been prematurely arrested by the negligence complained of. We think that no impartial arbitrator, to whom that question might be submitted, would fail to inquire and ascertain, so far as practicable, not only what the deceased had already done or accomplished and the facts as to

his age, health, capacity, and earning powers, but also as to his exact situation in life and the surroundings and influences, if any, which, according to common knowledge and observation, tend to the development of industry and thrift. It is to be remembered that actions of this nature were unknown to the common law. The right thereto is a creature of statute, and investigation will show that the provisions made in the different states are of such varying character that decisions thereunder afford few precedents of much value except in the jurisdictions where they have been announced. As the action is not of common law origin and the injury to be compensated for involves investigation into matters not before made the subject of judicial inquiry, it is not surprising that the rules of evidence therein should become involved in apparent confusion, though it is to be said that, when we consider the different statutes of the various states, the confusion is perhaps more apparent than real, a situation to which the compilers and annotators of decisions have not always given due attention. The construction and administration of our own statute is of course a matter for our own courts; and, notwithstanding there has been some uncertainty of expression with reference to the proper limitations upon the introduction of evidence, we think we are fairly committed to principles and rules recognizing the materiality and competency of testimony such as we have now under consideration. We also think them fully sustained by sound reasoning and the teachings of human experience. The assignment of error upon the admission of this testimony is therefore overruled.

It is next said that the court's instruction to the jury that the amount of plaintiff's damage, if any, was not to be increased by reason of the deceased having left children, and 4. SAME: instruction. that evidence concerning the children had been admitted only as bearing upon the question of inducement or incentive to industry in the deceased, is contradictory and misleading. We find nothing in the

instruction of which appellant can complain. The attempt of the court to limit the effect of the testimony was favorable to the defense. It said to the jury in effect that the mere fact that the deceased had children who survived him was not in itself a ground for the recovery of damages, but that if the plaintiff was found otherwise entitled to recover it might be considered for what it was worth as bearing upon deceased's incentives to industry. If we are correct in holding the testimony admissible at all, then the limitation tended to restrict rather than to enlarge the plaintiff's right of recovery, and defendant has suffered no prejudice. Whether such restriction was called for under the record we need not decide.

Error is assigned upon the ruling of the court striking out testimony of a statement by the deceased that he could not obtain life insurance because of his health. We think

5. SAME: exclusion of evidence: harmless error.

the testimony should not have been stricken because it was a circumstance, though one of slight importance, bearing upon his condition of health, and consequently upon his expectancy of life and ability to labor; but these circumstances and conditions were quite fully inquired into, and we think the exclusion of this particular item was not a prejudicial error.

The same may be said of one or two other similar rulings. There was no error in admitting complaints made by the deceased of pain and suffering soon after his injury. It

6. SAME: evidence: pain and suffering.

is true the administrator was not entitled to recover for the pain and suffering sustained by the deceased, and the jury were so instructed, but the rule which admits the complaints of the injured person as bearing upon the nature, extent, and location of his injuries is quite elementary. *Hamilton v. Coal Co.*, 120 Iowa, 149; 7 Ency. Evidence, 386.

The complaint that the damages allowed ($8,000) are excessive cannot be sustained. The deceased was still a young

man, with an expectancy of life of thirty-six years. He was

**7. Same: excessive damages.** a boiler maker earning from $56 to $108 per month; and, while as we have said he was probably not a man of robust health, he was engaged in labor at his trade and, so far as appears, was in no respect incapacitated to pursue the same, and no circumstances are disclosed rendering it necessarily improbable that he would live out his expectancy maintaining the physical efficiency of the average man.

We find no prejudicial error in the record, and the judgment of the district court is *Affirmed.*

EVANS, GAYNOR, WITHROW, and LADD, JJ., concur.

PRESTON, J. (dissenting.)—I regret that I am unable to agree with my Associates in regard to the admissibility of the evidence as to the number of children and instruction No. eleven and one half on that subject. I shall set out the record more fully than has been done in the majority opinion.

Plaintiff, Mrs. Nicoll, formerly Mrs. McNulty, was permitted to testify over objections as follows: "Q. Did he leave any family other than yourself? Did he have any children? The Court: It is not admitted for the purpose of affecting damages in any way, but it is done for some other purpose. A. Four. Q. What were their ages at the time of his death? A. The oldest was ten, the youngest was a little over a year old." In this connection, the court gave the following instruction: "(Eleven and one-half) You are instructed that there can be no recovery in this case for pain and suffering endured by the deceased resulting from the injury received by him, and you are also instructed that the remarriage of the widow of the deceased is not to be considered by you in diminishing the amount of damages sustained by said estate, if any you find. And on the other hand the amount of damages, if any you find, is not to be increased

by reason of the deceased having children that he left surviving him; evidence of his children and the number thereof being admitted by the court solely as bearing upon the question of inducement or incentive to habits of industry in case the deceased had lived."

It is urged by appellant that admitting the evidence, as to the children, was erroneous; that the latter part of the instruction did authorize the jury to enhance the damages by reason of deceased having left children; and that the last two sentences therein are in conflict with each other. It may seem that, even though this evidence was not admissible, the exception taken to its admission was canceled by the instruction of the court that the damages were not to be increased by reason of the fact that deceased left children surviving. It has been held that where the verdict is not excessive, and the court instructed the jury to disregard the evidence, the error in admitting it is not fatal. 13 Cyc. 197, and cases, some of which are to the contrary. But it is claimed by appellant that the verdict is excessive, and that the instruction did not cure the error because the latter part of it did authorize the jury to enhance the damages. The object in introducing this evidence was, no doubt, to inform the jury that deceased had infant children dependent upon him for support. It is impossible to determine how far the assessment of damages was controlled by this evidence as to plaintiff's family of small children. The reasonable inference is that it had some influence upon the verdict. The damages in such cases are more or less uncertain in any event, and the evidence should be limited to legitimate elements of damage. Appellant contends that the question as to the admissibility of such evidence has been settled in the case of *Beems v. Railroad Co.*, 58 Iowa, 150, and that it is not admissible for any purpose in a case of this character. Appellee says that case was a three to two decision; that it is not in harmony with prior holdings, has not been followed since, is unsound; and that it has been an open question in this state for thirty years. It appears

to me that the tendency of our former cases is to exclude such evidence. The question as to evidence in regard to children was not involved in the *Stafford* case, or the *Wheelan* case, and many of the other cases cited in the majority opinion. It is being now decided for the first time in this jurisdiction, or any other, so far as I am able to discover, that such evidence is competent, under such a statute as ours, where the question is as to damages to the estate.

As stated, some of the cases hold that the evidence is not competent, but that if the court instructs the jury that it must not be considered as affecting damages, and the damages are not excessive, there is no prejudice. Other cases hold that, if such evidence is admitted and the verdict is excessive, it may be cured by remittitur, because the only effect of the evidence is to enhance the recovery. *Chicago, R. I. & P. Ry. v. Batsell*, 100 Ark. 526 (140 S. W. 726). Though this is denied in *Jones v. George*, 227 Ill. 64 (81 N. E. 4, 10 Ann. Cas. 285), to which I shall again refer.

But the cases all hold that the evidence is incompetent. I am not prepared to say that a reversal should follow in every case where the evidence as to children is admitted. Cases might arise where the court instructed the jury squarely to not consider it as affecting damages and where the evidence is such that it could be fairly said that the verdict is not excessive and that there was no prejudice. But that is not the question being now determined. The question is: Is the evidence competent? The fact that jurors may learn about it on the street corners, or in the public prints, or incidentally in the courtroom is not, as I think, a reason for holding it competent.

As an original proposition, I should be inclined to say that the recovery should be the same whether a man is married or single. Conceding the rule to have been established by this court that evidence that the party is married is competent, I would not extend the rule to include evidence as to children. It occurs to me there are reasons for excluding evi-

dence as to children which would not apply to the question whether the party was married. There is but one wife, who is an adult, but there may be many children, some of tender age. But the question as to whether evidence that a person deceased, or injured, is married is not the question here, and I shall not discuss it. The only question now is whether it is competent to show the number and ages of children.

I concede that it is proper for a jury to be advised, in a general way, of the situation and condition in life of the. party injured, as held in the cited New York case of *Perry v. Lansing,* and other cases, but it seems to me the argument in support of the proposition that the evidence as to the number and ages of children is admissible is on the theory that children would be a greater inducement to earn and save. If it is an inducement for greater effort and stricter economy, the effect would be to increase the value of the estate, and, if that is so, the estate would suffer greater damage; therefore the recovery should be larger. I understand the majority to say this is not the purpose, but the reasoning and cases in support of the proposition are, as I think, based upon the theory that it is for that purpose. For instance, it is said that under the Nebraska statute, authorizing a recovery for the injury to support of dependent relatives, such evidence is competent, and that the reasoning of that court in such a case is applicable here. That such evidence is admissible, "not as a direct ground for the jury's action, but as showing what the deceased was doing, and likely to do, to make his life pecuniarily valuable to plaintiff." If the fact of having children is likely to make his life pecuniarily valuable, it should enhance the damages; if less valuable then the damages should be decreased. It would be one way or the other, depending on the character of the children, whether they were a help or otherwise.

I do not say that the evidence is not competent under the Nebraska statute, where damages do not go to the estate, as in Iowa. What I am trying to show is the false position of

the majority when they say it is not admitted for the purpose of increasing or decreasing the damages, when it cannot have any other effect, and is not and cannot be admissible for any other purpose.  It seems to be the theory under the Nebraska holding that the fact of having children would make the life more valuable, while in at least one Iowa case (*Dupree v. Railway*, 155 Iowa, 544) the thought seems to be that the life would be less valuable.  This is so, or else I do not comprehend the ruling in that case.  Here was the situation in that case, as stated in the majority opinion: "The plaintiff having shown the wages earned by the deceased, it was developed on cross-examination that he was saving none of his earnings and had no property.  On redirect examination plaintiff was permitted to show that deceased was supporting a wife and three children.  The defendant assigned error upon this ruling and cited *Beems v. Railroad Co.* in support of its position.  The authority of that precedent was not discussed by the court, for we held that the evidence was admissible, in any event, as an explanation of the fact that deceased was not making any savings."  If he was unable to save anything because of the expense of raising his children, what other effect could it have but to decrease the value of his estate?

It should be kept in mind that this is not a case under the Employers' Liability Act but is an action for damages to the estate of deceased.  In *State v. Rutledge*, 135 Iowa, 581, a criminal case, it was held such evidence was not proper, and in it the *Beems* case is referred to and approved.  In *State v. Wangler*, 151 Iowa, 555, a bastardy case, the ruling was the same, and the *Beems* case referred to, but it was held that in such a case there was no prejudice, on the theory, no doubt, that the form of the verdict in a bastardy case is guilty or not guilty, and the jury do not have to do with fixing the amount which shall be allowed for the support of the child.  But these two cases do not quite reach the point now under consideration.  The question first arose in *Donaldson v. Railway*, 18 Iowa, 280, but was not squarely decided;

the court holding that, because the jury were, by the instructions, guarded against allowance of damages for improper causes, there was no prejudice. The court did say: ''We would not be understood, however, as determining that evidence as to the number and ages of his children is strictly proper.'' In *Lowe v. Railway*, 89 Iowa, 420, 433, decided · since the *Beems* case, it is stated that it was shown by the evidence, among other things, that deceased left a wife and three children, but the question now being considered was not raised in any manner.

Under statutes which provide that the damages for wrongful death inure to the benefit of the family, such evidence is admissible. *Baltimore, etc., Ry. v. Mackey*, 157 U. S. 72 (15 Sup. Ct. 491, 39 L. Ed. 624 (2d Ed.)). In that case the statute excludes the creditors of deceased from any interest in the recovery and declares not only that the judgment shall inure exclusively to the benefit of his family but that the damages shall be assessed with reference to the injury done to the widow and next of kin. This seems to be the distinction running through the cases that, if the damages inure to the benefit of the family, it may be shown what persons compose the family, but not so if the damages go to the estate, as in this case. The question here is: What was the value of the life of the deceased to his estate? The number of his children can have no bearing on that question. The measure of the recovery and the elements to be considered are stated in *Grace v. Railway*, 153 Iowa, 418, 432, and *Neal v. Brick Co.*, 151 Iowa, 690, 695.

The thought in the last sentence of instruction eleven and one-half that evidence as to the children is to be considered on the question of inducement or incentive to habits of industry, etc., is on the theory, doubtless, that, as stated by the minority in the *Beems* case, it ''would largely add to the value of his personal services to his own estate.'' The majority opinion in this case says the purpose is ''to stimulate him to industry, prudence, and economy.'' It would seem

that, if this be true, the only effect it could have would be to increase the value of his estate, and thus necessarily to increase the damages, so that the last two clauses in instruction eleven and one half are in conflict and cannot be reconciled.

Some of the cases exclude evidence as to children because its admission is likely to prejudice the jury. It was said by a majority of the court in the *Beems* case that observation and experience do not teach that one's income is likely to increase in the same ratio as the number of his children. It would seem that there are other reasons for excluding such evidence. If it is thought that children would be an inducement to habits of industry, and thus increase the value of his estate, how long would the inducement continue? Would it continue during the entire expectancy of the person injured or deceased? Would there be other children born after the injury and after the trial? Would some of these die? What is their expectancy? What are their habits? Would their earnings, until they reach their majority, add to the estate, or would it cost more to raise them than they earn? Suppose a man has six minor children, who are dutiful, in good health, industrious, and saving; they would, when old enough, be a great help and aid to the parent in accumulating and saving money. But suppose the children are sickly, requiring medical expense, they are unable to work, or suppose they are lazy and spendthrifts, would they enhance or decrease the value of the estate? We will say that the parent is injured or killed. If proof as to the number of children is competent, then the man with the family of children who are not helpful obtains the same advantage by such proof as the man whose family is an aid to him, unless all these matters are gone into. Would defendant's attorney dare to cross-examine and show that the children are cripples or sickly? For the purpose of argument, I am assuming at this point that the sympathies of the jury would not be aroused, and that they would fairly consider such evidence for the only

purpose for which it could be considered, and that is to either enhance or decrease damages. If it be competent to show the number of children composing the family of the person injured or deceased, why would it not be competent to show that the parents or grandchildren of such person were members of his family, if that be the fact? These and other questions naturally arise. It seems to the writer that these matters are too remote, uncertain, speculative, and would involve the investigation of collateral matters. To hold that such evidence is admissible necessarily overrules the *Beems* case and overturns a precedent of thirty years' standing, is against the overwhelming weight of authority, and establishes a dangerous rule.

If the evidence is properly in the record, it would be legitimate to refer to it in argument to the jury, and hereafter, in personal injury and like cases, we may expect it to be used to the best advantage, and in all probability we will be compelled to reverse cases because of it.

Appellee cites *Hamann v. Bridge Co.*, 136 Wis. 39 (116 N. W. 854), and quotes therefrom as follows: "In an action for negligent death, by decedent's widow, suing as administratrix, she can show the state of her health, and the number of her children; the jury being properly cautioned that she can recover only for the pecuniary damage resulting to herself from the death." The opinion is brief on this point. It cites two prior decisions of the Wisconsin court, one of which *Lawson v. Railway*, 64 Wis. 447 (24 N. W. 618, 54 Am. Rep. 634) cites the *Donaldson* case, 18 Iowa, 280, as authority; and *Abbott v. McCadden*, 81 Wis. 563 (51 N. W. 1079, 29 Am. St. Rep. 910), in which the court says: "The court charged the jury, on the subject of damages, that the damages 'must be the money value only to her and her children which the life of the deceased was worth to her and them on the day of his death.' . . . This was error. The fact that there are children left surviving, whose support will be thrown on the plaintiff, is proper to be shown in evidence and to be considered by

the jury; but the damages recoverable are those which the widow has suffered, not those which the children have suffered." From this it appears that there is a different statute in Wisconsin from ours by which the damages are for the benefit of the widow and not the estate.

Appellee also cites as being to the same effect as the *Hamann* case, 7 Enc. of Evidence, 439; but an examination of the text shows that this is the rule in states which by statute allow the right of action for the benefit of the next of kin of deceased. He also cites 8 Am. Eng. & Enc. of Law, 941. But at page 940 of the same volume the same distinction is made which I make. It is there stated that, where the action is brought by the widow for the death of her husband, the ground of the admissibility of such evidence is that by the death of the father the responsibility of supporting and rearing the children is cast upon the plaintiff, their mother, and it is proper to show the extent and character of this responsibility thus cast upon her. Also 13 Cyc. 358, and numerous cases there cited. The text here refers to the number and condition of persons dependent upon deceased. Some of the cases there cited are under statutes such as I have mentioned. In my opinion the rule announced in the *Beems* case as to evidence in regard to children of a deceased person is correct, and that it is sustained by the weight of authority. In some of the cases the party injured was deceased, in others he survived, but the rule is the same, for in one case he is suing for his own injuries, and in the other his representative is suing for damages to his estate. As sustaining the rule in the *Beems* case, see 13 Cyc. 196, and cases, also *Pennsylvania Co. v. Roy*, 102 U. S. 451 (26 L. Ed. 141, 145 (2d Ed.)); *Baltimore, etc., Ry. v. Camp*, 81 Fed. 808 (26 C. C. A. 626, 54 U. S. App. 111); *Louisville, etc., Ry. v. Binion*, 107 Ala. 652 (18 South. 78); *Dayharsh v. Hannibal Ry.*, 103 Mo. 577 (15 S. W. 555, 23 Am. St. Rep. 900); *Jones v. George*, 227 Ill. 64 (81 N. E. 4, 10 Ann. Cas. 285); *Vandalia Coal Co. v. Yemm*, 175 Ind. 524 (92 N. E. 49, 94 N. E. 881);

*Simpson v. Foundation Co.,* 201 N. Y. 479 (95 N. E. 10, Ann. Cas. 1912B, 321); *Carlile v. Bentley,* 81 Neb. 715 (116 N. W. 772); *Maynard v. Oregon Ry.,* 46 Or. 15 (78 Pac. 983, 68 L. R. A. 477); *Ft. Worth v. Stokes,* 33 Tex. Civ. App. 218 (76 S. W. 231); *St. Louis Ry. v. Adams,* 74 Ark. 326 (85 S. W. 768, 86 S. W. 287, 109 Am. St. Rep. 85); *Louisville Ry. v. Eakins,* 103 Ky. 465 (45 S. W. 529, 46 S. W. 496, 47 S. W. 872); *Chicago, R. I. & P. Ry. v. Batsel,* 100 Ark. 526 (140 S. W. 726); *Union P. Ry. v. Hammerlund,* 70 Kan. 888 (79 Pac. 152); *Rio Grande Ry. v. Campbell,* 44 Colo. 1 (96 Pac. 986); *Oil Co. v. Tierney,* 92 Ky. 367 (17 S. W. 1025, 14 L. R. A. 677, 36 Am. St. Rep. 595); *Union P. Ry. v. McMican,* 194 Fed. 393 (114 C. C. A. 311). These are not all the cases which might be cited. Many others are cited in some of these. It would unduly extend this dissent to quote at any length from these cases, but I wish to refer to a few of them.

In *Pennsylvania Co. v. Roy, supra,* a verdict for $10,000 was set aside and the cause reversed solely because of the admission of such evidence.

In the Kansas case (*U. P. Ry. v. Hammerlund, supra*), it was held that the evidence was not competent, and the court said the question is not debatable.

In the Kentucky case of *Louisville Ry. v. Eakins, supra,* the court quotes from the opinion in the case of *City of Chicago v. O'Brennan,* 65 Ill. 163, as follows: "Was this evidence admissible? If it was, then it would have been competent to have gone further and shown all the circumstances of the family, such as that the mother was an invalid, that one of the daughters was blind, that one son had accidentally lost a leg, etc., if such had been the case, so as to present a most pitiable picture of a helpless family dependent upon appellee for support as a lecturer, for, as the evidence had no place in the case but as a stimulant to the jury, it would have been just as competent to make the stimulant strong as weak. But was it competent at all? It is an elementary rule that evidence must be confined to the points at issue. There

was no point in issue to which this evidence had any relevancy. This sort of attempt to foist irrelevant matters upon the attention of the jury, with a view to creating a personal interest, is too often the secondary resort of a party on the witness stand.'' The Kentucky case states that this rule has received the approval of that court in a number of recently decided cases, citing them.

In the case of *Jones v. George*, 227 Ill. 64 (81 N. E. 4, 10 Ann. Cas. 285), *supra*, it was said:

On the trial of this case appellee was allowed to prove that he was a married man and had three children. The evidence was objected to, and the objection overruled. The damages recoverable in this case can only be compensatory. The domestic relations, the financial standing of the parties, are therefore irrelevant. . . . *Youngblood v. S. Car. Ry. Co.*, 60 S. C. 9 (38 S. E. 232, 85 Am. St. Rep. 835), and note, where many other authorities are collected. . . . The error in admitting this evidence is virtually admitted by appellee and was recognized by the appellate court, but it was thought that the remittitur of $1,500 ought in some way to cure this error. We cannot assent to this view. Evidence of this character not only tends to enhance the damages, but it is calculated to arouse a sympathy for appellee which is liable to unconsciously influence a jury in the decision of other controverted questions of fact in the appellee's favor. It would be a dangerous precedent to hold that a party might introduce irrelevant testimony which would appeal to the sympathy, passions or prejudices of a jury in such a way as to insure him the verdict on all doubtful questions of fact, then permit the trial court to estimate how much of a gross sum awarded as damages was due to such irrelevant testimony, and deduct that from the total verdict and render judgment for the balance, and thus cure an error, but for which the verdict might have been in favor of the other party.

Early New York and Alabama cases are cited in the majority opinion. I have not examined them, but the later cases from those states which I cite hold that the evidence is inadmissible.

In my opinion, the evidence as to the number and ages of the children was not admissible in this case for any purpose, and the instruction cannot be sustained because of the conflict therein.  I would reverse.

DEEMER, J., joins in the dissent.